PEARL AND A. J. MARTIN v. JOSEPHINE SCHISKA.[1]

April 24, 1931.

No. 28,311.

*Victor E. Anderson* and *E. Valere Molle,* for appellant.
*A. R. English* and *C. J. Donnelly,* for respondents.

HOLT, J.

Defendant appeals from the order denying judgments notwithstanding the verdicts or new trials. Two actions, brought against

defendant for damages sustained by the plaintiffs when an automobile owned by defendant and operated by her alleged agent or servant upset because of the latter's negligence, were tried together and separate verdicts rendered, the one for $8,000 in favor of the plaintiff Pearl Martin, whose left hand was so cut at the wrist as permanently to destroy its use, and the other for $4,000 in favor of the other plaintiff, her husband, for the consequential damages' to him from his wife's disability.

On October 15, 1929, Reverend Soulard, the priest of the Catholic church of Green Valley, Minnesota, the defendant (his housekeeper) and three women, officers of the ladies aid society of the church, one having a three-year old child along, started from Green Valley to Minneapolis in a Buick sedan. The priest and defendant occupied the front seat. When about five miles east of Winthrop the car began to sway, turned over completely at least once, landing upright, but headed directly back from the course it was traveling. Broken glass severed the tendons of Mrs. Martin's left hand at the wrist. Reverend Soulard was driving when the accident occurred. Defendant drove from Morton to Winthrop. Upon conflicting testimony the jury could find that the cause of the accident was excessive speed of 60 to 65 miles per hour, coupled with an effort by the driver to adjust with his right hand the pillows upon which he sat, and having hold of the steering wheel only with his left. The rim with the tire on was torn off the right rear wheel, most of the spokes of the wheel being broken. We consider that there was ample evidence of the driver's negligence. The jury could well reject defendant's claim that the speed did not exceed 41 miles per hour and that there was a blowout of a new, "heavy duty" tire, run very little for only two weeks, and which was inspected before leaving Winthrop. The issue of contributory negligence was clearly for the jury.

Little need be said of the claimed excessiveness of the verdicts. The medical testimony is practically in accord that the fingers of the left hand do not function except that the little finger and the one next to it can be moved to a small extent. But in addition to

being useless there seems to be constant pain in the hand extending up the arm, due, as the doctors surmise, to nerves imbedded and cramped in scar tissues. There is also considerable atrophy in the hand and forearm. As a consequence of the pain sleeplessness and nervousness to a marked degree have resulted. It seems an amputated hand would be preferable. Mrs. Martin's expectancy of life is above 25 years. Her husband is a farmer. Before the injuries the wife did all the housework and also assisted in the farm work or chores. Since then she has not been able to do more than oversee, and a maid's reasonable wages have been seven dollars per week. It is readily seen that with board added the $4,000 verdict does not measure up to the damages the husband has sustained for the period of the wife's life expectancy.

The complaints alleged defendant's ownership of the car and its operation by herself, her agents, and servants, negligently, thereby causing the injury to Mrs. Martin. Defendant was called for cross-examination as the first witness at the trial. She testified that the bill of sale of the car ran to her alone, that the license was issued to her, and that Reverend Soulard drove with her consent. In fact when plaintiff rested defendant's sole ownership of the car was conclusively proved by her own testimony. But Reverend Soulard was called by defendant as a witness and claimed to own a half interest in the automobile, testifying that the purchase price had been paid "fifty fifty."

While defendant by her own testimony had, in our opinion, placed the sole ownership of the car conclusively in herself, so far as these actions were concerned, the trial court submitted that issue to the jury. And the instructions of the court relative to the right of recovery in case a joint ownership or co-ownership was found raise one of the principal law questions involved on this appeal. We think the instructions given on this subject are so favorable to defendant that she has no cause for complaint. The court said:

"The mere fact of the ownership of the car by the defendant is not enough to create liability on her part. A part owner of a vehicle is not liable for an injury caused by the negligent driving

of a co-owner of such vehicle or car if the car is being driven solely for the use of such co-owner and the part owner has no control thereof. The right of control is the test of the relation of master and servant. * * * Now, if you find from the evidence that the car was being used on this trip for the joint benefit of the defendant and Father Soulard and that the defendant had the concurrent right to the control and operation of the car with Father Soulard, then Father Soulard was the agent or servant of the defendant in driving the car, and the defendant in that case would be liable for his negligence."

The court then instructed in effect that if the trip was solely for Reverend Soulard's benefit or that of his church and defendant was a mere passenger and she had no right to direct or control any operations of the car, then there was no relation of servant or agent between him and her and she would not be liable for the driver's negligence. The court continued:

"Control is not determined by who is driving; it is a question of who has the right to direct the operation of the car. Did the defendant have the right of such control, either exclusive or joint, with Father Soulard? That is an important question in this case."

It may be doubted whether a co-owner, situate as was defendant, even on the claim that the trip was solely for the co-owner driver and she an invited guest, can be said to have surrendered all right of control. She had property rights to protect in case the driver's negligent driving threatened injury or destruction to the car. But it is not necessary to determine that proposition, for we deem the instructions alluded to as favorable to defendant as she could demand on her testimony.

Error is also assigned upon the refusal to give certain instructions requested by defendant: (a) To the effect that if co-ownership was found, Soulard, the driver, had the right to drive as he pleased free from defendant's control; (b) to the effect that if the driver had borrowed the car of defendant, her riding therein would not create liability; (c) to the effect that if the occupants were the guests of

the driver and had accepted and regarded him as host, defendant was not responsible; and finally (d) to the effect that if the automobile was being used for the common interests of the driver and those riding in the rear seat and he was not under the direction or control of defendant, there could be no recovery.

In addition to what has already been said touching the first requested instruction, defendant's testimony clearly indicated that she was in the habit of controlling Reverend Soulard whenever he undertook to run the car at an excessive speed, and the inference is that he obeyed her direction. There is no testimony from which the jury could find that defendant lent the car to the driver, or that Mrs. Martin was the guest of the driver rather than of defendant, or that of common interests so as to find that Mrs. Martin, riding in the car, was engaged in a joint enterprise with the driver or defendant.

In this connection may be considered the error assigned upon the instruction given that there was no evidence of Mrs. Martin's being on a joint enterprise with the driver. We think the instruction proper. After the accident Reverend Soulard and defendant took the train from Winthrop to Minneapolis, he evidently to accomplish his personal purposes in making the trip and she to visit her relatives in the Twin Cities; for it does not appear that anything was done by either for the ladies aid society of which defendant was not even a member. The passengers in the rear seat abandoned the trip and returned to their homes. Neither one of them had arranged for the use of the car. They were merely invited to ride. There was no joint enterprise so far as concerned the procuring, driving, or paying for the expense of the car or the trip. Mrs. Martin testified that she had often been given rides in the car by defendant, who had stated that she owned it. Defendant denied having so stated; but it is significant that nowhere in her testimony does she say that Reverend Soulard owned any interest in the car or had contributed any part of the purchase price. Even on the theory of the defense advanced she was part owner. She drove part of the trip. Her object in going was distinct from

that of the other occupants, who each, in some respects, had different purposes in view from any other occupant.

The authorities are in accord that there could have been no joint enterprise between Mrs. Martin and the driver or defendant. Kokesh v. Price, 136 Minn. 304, 161 N. W. 715, 23 A. L. R. 643; Hollister v. Hines, 150 Minn. 185, 184 N. W. 856. She had no right of control over the driving. Pope v. Halpern, 193 Cal. 168, 223 P. 470; Farthing v. Hepinstall, 243 Mich. 380, 220 N. W. 708. The subject is quite fully annotated in Keiswetter v. Rubenstein, 48 A. L. R. 1049, particularly with respect to automobile accidents beginning on p. 1077.

We have been overwhelmed with citations of decisions from other states. Little aid is found therein, for the cases not only differ widely on the facts, and the courts do not regard the law governing automobile operations alike. In Massachusetts, for instance, proof that the car owned by the defendant and negligently operated by his servant does not make a prima facie case for recovery. The plaintiff must go farther and prove that the servant was in the pursuit of the defendant's business when the injury was inflicted. Hartnett v. Gryzmish, 218 Mass. 258, 105 N. E. 988. And the same in Kansas, Halverson v. Blosser, 101 Kan. 683, 168 P. 863, L. R. A. 1918B, 498, which also rejects our rule in regard to the "family" automobile. Zeeb v. Bahnmaier, 103 Kan. 599, 176 P. 326, 2 A. L. R. 883. In Hathaway v. Mathews, 85 Cal. App. 31, 258 P. 712, there was a loan of the car to the driver who inflicted the injury. Although the lender was in the car at the time, it is clear that she had no opportunity to prevent that collision.

We need not go outside for authorities to sustain the proposition that when the owner of an automobile or other vehicle loans or rents the same to another he is not liable for the latter's negligent operation thereof. Slater v. Advance Thresher Co. 97 Minn. 305, 107 N. W. 133, 5 L.R.A.(N.S.)598; Conroy v. Murphy Transfer Co. 148 Minn. 14, 180 N. W. 704; Rhodes v. Bonde, 152 Minn. 413, 188 N. W. 1002; Cornish v. Kreuer, 179 Minn. 60, 228 N. W. 445, where cases from other states are cited. We accept also for the purposes of this case what appears to be the law declared elsewhere, that

joint ownership of a vehicle does not constitute the owners partners or in such relation that the owner who drives becomes the agent or servant of the other. Knight v. Cossitt, 102 Kan. 764, 172 P. 533; Hamilton v. Vioue, 90 Wash. 618, 156 P. 853, L. R. A. 1916E, 1300.

There are numerous assignments of error upon rulings upon the reception or exclusion of testimony, but only two of these are argued and are deemed the only two worthy of mention. The first is a letter written by Reverend Soulard to the state commissioner of insurance. This letter impeached the testimony of the witness as to ownership of the car and on the closely related matter of the person for whom he drove. There was no effort to exclude from the jury any sentence thereof; and the court by proper cautionary instructions limited the contents of the letter so that no prejudice could result to defendant.

The second matter referred to was receiving testimony discrediting the opinion testified to by defendant's medical expert by introducing contradictory statements made by the expert on some other occasion without having laid a foundation, the expert not having been asked, when on the stand, whether or not he had made such contradictory statements. This was clearly error; and on reflection the learned trial court so concluded, struck out the testimony, and explicitly instructed the jury to disregard it. There is nothing in the case which would lead us to think that the jury failed to follow the instruction.

A new trial is claimed because of alleged misconduct of the attorney for the prevailing party. There is some dispute as to whether or not the attorney correctly understood the name of the company that carried liability insurance on this car. It was proper to know such name in order to ascertain whether prospective jurors were interested in such company. Storhaugen v. Motor T. S. Co. 171 Minn. 47, 213 N. W. 372; Scholte v. Brabec, 177 Minn. 13, 224 N. W. 259. It would seem that the efforts to hide from the jury in a case involving an automobile accident the fact that an insurance company has an interest therein and is conducting the defense is carried to an extreme. In one state at least the owner of an automobile is required by statute to carry liability insurance. Most

of such owners of financial responsibility do carry such insurance, and we might say that every person of sufficient experience and intelligence to be a fit juror knows such to be the fact. It is hardly worth while to let the jury during the trial of such a case speculate on whether or not the defendant is insured. What juror in these days, when he hears an attorney in the case inquire of prospective jurors whether he is interested as a stockholder or otherwise in a named insurance company, but knows that that company has insured the owner of the automobile involved against liability. Cases are not unknown where the defendant owner carrying insurance is interested in the success of the plaintiff. When such is a defendant's attitude, ought the jury to remain ignorant of the fact during his testimony that an insurance company and not he, the witness, will have to pay the verdict? Where it is apparent that the jury's information regarding the existence of insurance is not made use of to inflame or prejudice the jury in favor of either of the nominal or actual parties to the litigation, the fact of such information, or the manner in which that information was imparted in open court, should not call for a new trial.

In this case misconduct is also predicated because, after Reverend Soulard, called for the defense, had testified to owning a half interest in the car, defendant when on the stand was, over objection, required to disclose that she had applied for liability insurance as sole owner. The conduct of the defense clearly justified the disclosure from the defendant's own lips of facts refuting the testimony of her witness Reverend Soulard. It is true the court made the right of control the test of liability rather than ownership, but from whatever angle liability is approached ownership may become an important factor.

From the conclusion reached on the assignments of error covered, it results that there was no error in denying judgment notwithstanding the verdicts.

The order is affirmed.