# OPAL SANDER, SPECIAL ADMINISTRATRIX OF THE ESTATE OF ARCHIE WILLIE WILSON, v. JOHN DIESETH AND OTHERS.[1]

January 20, 1950.

No. 35,152.

*Johanson, Winter & Lundquist,* for relators John Dieseth, E. R. Johnson, and B. K. Soby, copartners d. b. a. John Dieseth Company.

*John J. Sexton,* for relators Walter P. Burris, d. b. a. Burris Excavating Company, and Woodrow Burris.

*Dell, Rosengren & Rufer,* for respondent.

PER CURIAM.

Mandamus to compel the district court for Otter Tail county to set aside its order denying defendants' motion for a change of venue on the ground that an impartial trial cannot be had in Otter Tail county.

Suit was instituted by Opal Sander, as special administratrix of the estate of her deceased son, Archie Willie Wilson, against defendants for their alleged negligence in causing the death by drown-

[1]Reported in 40 N. W. (2d) 844.

ing of plaintiff's decedent. Defendants, as a contractor and a subcontractor, were employed by the city of Fergus Falls to do certain street excavation work, during the course of which a deep hole was dug. On Saturday, July 30, 1949, a large rainfall caused the aforesaid hole to be filled completely. Three children of the same family, inclusive of plaintiff's decedent, who was five years of age, and his two brothers, aged 9 and 11 years, fell into the water-filled hole while playing and were drowned.

Defendants predicate error upon the trial court's refusal to grant a change of venue on the ground (M. S. A. 542.11[3]) that an impartial trial cannot be had in Otter Tail county by reason of the intense excitement and sympathy generated by the tragic accident and because of the unfavorable publicity carried in the newspapers. Fergus Falls and other Otter Tail county newspapers, as well as the metropolitan press, publicized the tragedy with detailed and descriptive articles, which were accompanied by striking headlines and by pictures of the excavation. No prejudice will reasonably result from the newspaper pictures, in that similar pictures will most likely be introduced at the trial to acquaint the jury with the locus of the accident. Certain articles dealt with the financial condition of the parents and gave reports of the progress made in raising a fund for their financial relief. Some articles discussed the supposed liability of defendants for possible negligence and the likelihood that they were protected by insurance. One article stated that defendants "all are reported to have had insurance against accidents." One newspaper said that it had been informed by attorneys that, if anyone is liable, the city, the contractor, and the subcontractor could all be sued either jointly or separately, and that the liability for, and the amount of, damages would likely become questions for the jury. Later, an article announced the commencement of a suit for $30,000 against defendants on the ground of alleged negligence in not protecting the hole.

Although we have never approved of a practice which brings a defendant's insurance to the attention of the jury, except in a limited way for certain restricted purposes (see, 4 Dunnell, Dig. &

Supp. § 5252), we cannot say that a jury's knowledge of the existence of insurance is necessarily or even likely to be prejudicial in this day when the average citizen of sufficient intelligence and experience to be a fit juror knows that, as a general rule and with few exceptions, contractors, automobile owners, and others of normal financial responsibility carry protective insurance. See, Martin v. Schiska, 183 Minn. 256, 236 N. W. 312; Odegard v. Connolly, 211 Minn. 342, 1 N. W. (2d) 137. Not only is the average person who is fit to be a juror normally familiar with the prevalent practice of carrying insurance, but he is also inured to the never-ending glare of publicity which usually is focused upon every human tragedy, and it does not follow that he is likely to become so overcome with sympathy that he cannot act impartially. Each case must stand on its own merits according to the surrounding circumstances. In the instant matter, 18 affidavits support defendants' contention that a fair trial cannot be had in Otter Tail county, and these are controverted by 15 affidavits to the contrary. A clear issue of fact was presented. We cannot say that there has been an abuse of discretion. Whether a change of venue should be granted because an impartial trial cannot be had in the county wherein the action is pending is a matter resting very largely in the sound discretion of the trial court, and its decision will not be reversed except for a clear abuse of discretion. State ex rel. Austin Mut. Ins. Co. v. District Court, 194 Minn. 595, 261 N. W. 701; American Bldg. & Const. Corp. v. Herrmann, 162 Minn. 507, 201 N. W. 949; Guyer v. Smullen, 160 Minn. 114, 199 N. W. 465; Dice v. Johnson, 187 Iowa 1134, 175 N. W. 38; 6 Dunnell, Dig. & Supp. § 10129; 56 Am. Jur., Venue, §§ 56, 70, and 74.

Writ denied.