### BETSEY J. OLSON v. HARRY OLSON AND ANOTHER.[1]

November 28, 1952.

No. 35,788.

*Johanson, Winter & Lundquist, Marvin E. Lundquist,* and *Theodor Slen,* for appellant.

*Freeman, Larson & Peterson,* for respondents.

CHRISTIANSON, JUSTICE.

Action is brought by the special administratrix of the estate of Ole J. Olson to recover damages for the latter's wrongful death

[1]Reported in 55 N. W. (2d) 706.

resulting from a collision between a car driven by decedent and a truck owned by defendant Arvid O. Olson and driven by defendant Harry Olson with Arvid O. Olson's consent. The trial court granted defendants' motion to dismiss at the conclusion of plaintiff's case, and plaintiff appeals from an order denying her motion for a new trial.

At about ten p. m. on the evening of July 1, 1950, decedent was driving west on U. S. highway No. 12 about two and one-half miles northwest of the intersection of U. S. highway No. 12 and highway No. 119. He was returning from Appleton, Minnesota, with his son-in-law, Wallace Sorenson, in Sorenson's car, a 1939 Ford, to Sorenson's home. At the same time and place, defendant Harry Olson was traveling east in a 1939 Ford two-ton truck with a grain box eight feet in width. The car and truck collided and decedent was fatally injured.

U. S. highway No. 12 is paved with tarvia and is about 24 feet wide at the scene of the accident with four-foot shoulders on either side. The highway has a center line consisting of a series of short painted stripes. The accident took place on a level, straight section of the highway which extended at least 1,000 feet in each direction from the scene of the accident. To the west, there is a crest of a hill and a curve turning to the southwest; to the east, there is a bend in the highway.

Wallace Sorenson, the passenger in the car driven by decedent, was asleep until just before the impact when he was awakened by a quick jerk of the car so his testimony is not at all helpful in disclosing how the accident happened. Plaintiff relied on two eyewitnesses who were traveling behind the car driven by decedent. They were about 150 feet behind decedent's car when the collision occurred. Their testimony was substantially the same. They had pulled up behind the car driven by decedent, which was traveling not over 25 miles per hour, and were preparing to pass when the truck driven by defendant Harry Olson came around the curve. One of plaintiff's witnesses estimated the truck's speed at 40 to 50 miles per hour, and the other thought it was traveling 50 miles per hour

or better. It had very bright headlights which were on high beam and were not dimmed prior to the collision. Approaching the point of the collision, the truck was in its proper lane. Likewise, the car driven by decedent was in its proper lane until just shortly before the impact when it moved to the left. It appeared to one of the witnesses that decedent attempted to turn the car back to his right at the last instant.

One witness testified that the collision occurred on or near the center line[2] and that, as far as he could see, all the debris from the collision was on the truck's side of the highway. The other witness was not interrogated concerning these particular matters. However, since they both positively placed the truck in its proper lane and since it appeared from the damage to the respective vehicles that the left front of the car collided with the left front of the grain box which extended one and one-half feet out from the body of the truck, the inference from the evidence most favorable to plaintiff was that decedent drove slightly over the center line into the truck's lane but that the point of impact was not very far over the center line.

After the impact, the truck came into the north lane forcing the witnesses' car off the highway before the truck driver regained control of the truck. The car driven by decedent ended up on the south side of the highway with two wheels in the ditch.

---

[2]On cross-examination this witness testified as follows:

"Q. Now, this truck as you saw it coming towards you was on its own side of the road, was it not, you could tell that?

"A. I'd say it was.

"Q. And it was on its own side of the road at the time the accident happened, was it not?

"A. He was on the side of the line.

"Q. So the Sorenson car was over the center line at the time the accident happened, was it not?

"A. I don't know. The accident occurred on the center line.

"Q. Isn't it a fact that the truck at all times was in its own lane?

"A. As far as I could see, he had awfully bright lights, hard to tell.

"Q. I understand that. But from what you saw, isn't it a fact that the truck at all times was in its own lane?

"A. That is right."

The trial court granted defendants' motion for dismissal at the conclusion of plaintiff's case upon the following grounds: (1) "that there is no evidence that any negligence on the part of the defendant driver contributed proximately to the cause of the accident" and (2) "that it appears that the fact that the plaintiff intestate, turned his car over into the wrong lane just before the accident contributed proximately to the accident, and that there is no adequate explanation for his doing so." Each of these grounds will be considered in the order stated by the trial court.

■ The undisputed testimony established that defendants' truck had very bright headlights and that as the truck approached the car driven by decedent its headlights, in violation of M. S. A. 169.61, were on high beam and were not dimmed. Section 169.61 provides in part as follows:

"When the driver of a vehicle approaches a vehicle within 1000 feet, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver, * * *."

Section 169.96 provides that a violation of the highway traffic regulation act is prima facie evidence of negligence. It is clear that the statute imposed a duty on defendant truck driver to dim his lights when he approached the car driven by decedent and that his violation of that duty was negligent conduct with respect to decedent unless it appears, as a matter of law, that the violation of the statute was not the proximate cause of the collision.

The trial court was of the opinion that the truck's headlights could not have blinded decedent. In a memorandum accompanying its order denying plaintiff's motion for a new trial, the trial court stated in part:

"* * * The witnesses while facing the lights in question, were able to observe the speed of both vehicles, the position of each upon the roadway at all times, were able to see the center line and the position of the car and the truck with reference to it up to the time of the crash. It seems to me that would have been impossible had the

lights of the on-coming truck been blinding or confusing to any material degree. It would seem that the contrary is conclusively demonstrated by their testimony. They would not have been able to see any more in broad daylight."

Implicit in the trial court's reasoning is the assumption that, since neither the driver nor the passenger in the car behind decedent were blinded by the truck's headlights, it necessarily follows that decedent could not have been blinded. With this we cannot agree. On the contrary, common experience would indicate that the drivers of two cars 150 feet apart would not be blinded at the same moment by an oncoming light. At least a jury could so find in the instant case. The fact of blindness depends upon the location, angle, and distance of the oncoming light from the particular driver. We find nothing in the record before us which would warrant the trial court's assumption as to this fact.

The trial court's memorandum continues:

"I have examined the cases cited by plaintiff involving bright lights. In all of them there was direct testimony that the driver was blinded, misled or confused by the lights in question. There is no such testimony in this case. A long list of possible causes for decedent's deviation might be compiled, all of them as plausible as the one suggested by plaintiff. A verdict for plaintiff here would clearly rest on speculation and conjecture."

It is true that there was no direct testimony of blindness in the instant case; there hardly could be since the driver is dead and his passenger was asleep at the time of the accident. But we have not limited recovery to cases where there has been direct testimony of blindness. In Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580, the decedent was driving upon a viaduct when he struck a center pole and was fatally injured. It was proved that two cars were driving on the viaduct in the opposite direction at the time of the accident. In support of her theory that decedent was blinded and unable to see the center poles, plaintiff produced witnesses who testified that they had experienced difficulty in seeing the poles

while driving on the viaduct under similar circumstances. In addition, plaintiff introduced medical testimony in reference to night blindness. After a verdict for the plaintiff, defendants appealed from an order denying their motion for a judgment *non obstante* or a new trial. In sustaining the admissibility of the foregoing testimony, this court stated (169 Minn. 346, 211 N. W. 582) :

"'* * * All this testimony had a tendency to prove blindness by showing the possibility and probability thereof in an effort to reasonably account for the tragedy."

And (169 Minn. 345, 211 N. W. 582) :

"'* * * How much effect, if any, the lights had on decedent is in controversy and what inferences may have been drawn from the circumstances in reference thereto were peculiarly for the consideration of the jury."

Likewise, in Putnam v. Bowman, 89 N. H. 200, 205, 195 A. 865, 868, where the plaintiff had died from natural causes before the trial of his case, the New Hampshire court stated:

"Although there is no direct evidence that Mr. Putnam [plaintiff] was blinded by the lights of the car approaching him, common knowledge is sufficient to raise the inference that he might have been. * * * Since there was no evidence that Mr. Putnam [plaintiff] was not in fact blinded by the lights of the Flaherty car the inference that he was so blinded is one of which the evidence is capable."

Upon the state of the evidence in the instant case, we are of the opinion that the causal relationship between defendant truck driver's violation of § 169.61 in failing to dim the truck's headlights when meeting decedent's car and the collision in question presented a jury issue.

■ Having decided that plaintiff had made out a prima facie case, of negligence against defendants, we come to the final question. Was decedent guilty of contributory negligence as a matter of law? When decedent drove onto the left half of the highway, it was a

violation of § 169.18. This violation was prima facie evidence of negligence. § 169.96. The effect of the operation of such a statute is stated in Demmer v. Grunke, 230 Minn. 188, 193, 42 N. W. (2d) 1, 5, as follows:

"* * * A statutory violation constituting prima facie evidence of negligence prevails as a controlling evidentiary factor against the violator only so long as there is an absence of evidence tending to show a reasonable ground for such violation * * *. The burden of producing such evidence of justification is upon the violator, but the moment such evidence appears from any quarter whatever the prima facie case against the violator not only ceases thenceforth to have any validity, but wholly vanishes from the litigation as an evidentiary factor, and thereupon the burden of going forward with the evidence shifts to the opposing litigant."

This court has previously held that evidence that a highway was slippery or icy and that a car skidded into the left lane was sufficient to raise a jury question as to whether the violator's conduct was negligent. Dohm v. R. N. Cardozo & Brother, 165 Minn. 193, 206 N. W. 377; Raymond v. Kaiser, 204 Minn. 220, 283 N. W. 119. Likewise, evidence that a blowout caused a car to go into the left lane was held sufficient to raise a jury question in Spates v. Gillespie, 191 Minn. 1, 252 N. W. 835.

In Johnson v. Reinhard Brothers Co. Inc. 205 Minn. 212, 285 N. W. 536, where the collision took place on plaintiff's side of the highway, the following evidence was held to present a fact question whether the defendant's violation of the statute was negligence. After a six-inch snowfall, the snow had been partly cleared off the highway by a snowplow in such a way as to raise snowbanks along each side of the highway. A single set of ruts in the loose snow had been made by the traffic that morning. The defendant was following a truck down the highway in this set of ruts which straddled the center of the highway. The truck caused blowing snow which for a short distance before the accident blew across the highway and obscured the defendant's view. The truck turned out to avoid the plaintiff who was coming in the opposite direction, but neither the

defendant nor the plaintiff saw each other until the collision was unavoidable.

In Prescott v. Swanson, 197 Minn. 325, 331, 267 N. W. 251, 255, where there was evidence that the defendant was blinded when a gust of steam from a locomotive swept across the highway and that he had crowded slightly over the center line, this court impliedly approved the following instruction with reference to excuse for violation of § 169.18:

"* * * while the law requires the driver of an automobile to keep to the right when meeting another vehicle, the driver cannot be held guilty of negligence in unconsciously failing to do so if that is impossible by reason of circumstances over which he has no control and for which he is in no sense responsible."

The inference most favorable to plaintiff from the evidence in the instant case is that decedent was blinded by defendants' bright lights and that he unconsciously moved to the left unaware of his error until it was too late to avoid the collision. The controlling question presented for decision is: Did decedent's error in judgment so violate the standard of conduct of a reasonably prudent man that decedent was guilty of contributory negligence as a matter of law? A jury could find that it was an error that a reasonably prudent man would not make, but we are of the opinion that decedent's conduct in momentarily turning to the left when blinded by bright lights under the circumstances disclosed here was not so clearly a violation of the standard of conduct of a reasonably prudent man as to constitute contributory negligence as a matter of law.

It follows that the trial court erred in dismissing plaintiff's action at the conclusion of plaintiff's case and that the order of the trial court denying plaintiff's motion for a new trial should be reversed.

Reversed and new trial granted.