AMOS B. KNUDSON v. CLIFFORD NAGEL.[1]

December 26, 1952.

No. 35,793.

[1]Reported in 56 N. W. (2d) 420.

*Nichols & Tuveson,* for appellant.
*Ostrander, Fullerton & Olson,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion for a new trial.

This action for damages for wrongful death arises out of a head-on collision between two trucks driven by defendant and the plaintiff's decedent. The accident occurred July 3, 1950, about 9:15 a. m., several miles south of Albert Lea, Minnesota, at a point where a north and south town road forms a Y connection with county aid road No. 16 which is a gravel road running east and west with a roadbed 18 feet wide from grass to grass. At the place where the collision occurred there is a three-foot drainage ditch along the south side of county road 16 with a "heavy" embankment against the adjacent fence. On the north side of the road there is a grassy area consisting of a triangular island formed by the Y connection of the town road. There was no rain and the roadbed was dry.

The colliding trucks were traveling in opposite directions on county road 16. Defendant was driving west with his 1950, 1½-ton Chevrolet truck which was loaded with lumber weighing about 500 pounds. Decedent was traveling east with a 1937, 1½-ton Ford truck which was loaded with scrap iron weighing nearly 1½ tons. Defendant's truck was eight feet wide at its widest point and the rear platform was equipped with a grain rack which extended eight or ten inches above the cab. Decedent's truck was seven feet eight inches wide and its back platform was enclosed with wood sides two feet high so as to form a box in which the scrap iron was loaded.

The point of impact was approximately at the crest of a steep hill which defendant ascended in coming from the east. The road to

the west of the hill crest is relatively level. Defendant admits that he drove in the middle of the road at a speed of about 30 miles per hour and that it was not until he reached the crest of the hill that he first saw decedent's truck approaching from the opposite direction at a distance of only 30 or 40 feet. Defendant testified that decedent was also traveling in the middle of the road and was going between 35 or 40 miles per hour. Defendant at all times maintained his course of travel without turning to the right or the left. The trucks collided head on and apparently stopped substantially at the point of impact. Defendant is the only eyewitness since decedent died in the collision. There were no skid marks of evidentiary value.

The jury awarded plaintiff a verdict of $10,427.50. Defendant appeals from the order denying his motion for judgment notwithstanding or a new trial. We are concerned with the following issues:

(1) Was decedent guilty of contributory negligence as a matter of law?

(2) Under the circumstances disclosed by the evidence could the jury disregard defendant's testimony as the only surviving witness?

(3) Did prejudicial error result from the cross-examination of the defendant which disclosed that he was insured?

■ Was decedent guilty of contributory negligence as a matter of law? Any finding to that effect must rest primarily on defendant's positive testimony that decedent was traveling down the middle of the road and not within his own travel lane. Taking the view of the entire evidence most favorable to the verdict the jury could reasonably find the following additional facts: At the time of impact, as disclosed by the position of the truck after the collision, defendant was encroaching with his truck upon decedent's lane of travel to the extent of seven feet beyond the center line. Since both trucks met squarely head on and stopped substantially at the point of impact the position of one truck is reasonably indicative of the position of the other. It follows therefore that dece-

dent's truck at the moment of collision projected into the opposing traffic lane a distance of about one foot. We also have the significant circumstances that decedent's truck after the collision stood headed slightly toward the northeast. The position of decedent's truck is shown by the further fact that the load of scrap iron, as it broke out through the right front corner of the truck box, was scattered principally—although not entirely—on the south side of the road.

In the face of these physical facts we come to defendant's testimony that when he first saw decedent's truck only 30 or 40 feet away it was traveling down the center of the road at a speed of about 35 or 40 miles an hour. Is such testimony controlling on the issue of contributory negligence as a matter of law? Although decedent's truck had the heavier load both trucks stopped at the point of impact indicating that decedent was at least not traveling any faster than the defendant. If decedent had been traveling faster, the momentum of his heavier load would have driven defendant's truck backward, but such was not the case. The jury from the physical facts could reasonably infer that defendant was not only inaccurate in his estimation of decedent's speed but also in his observation as to where decedent's truck was traveling. The jury could find that defendant, instead of traveling down the middle of the road, was seven feet within the south lane of travel when he first saw decedent 30 or 40 feet away.

With each truck going about 30 miles an hour, defendant had scarcely more than one-half second to make his observations. With defendant's truck seven feet within decedent's lane, and with both trucks colliding squarely head on, it follows that decedent was not traveling down the middle of the road but was primarily in his own lane with the exception of a distance of about one foot.

Insofar as decedent, however, crossed the center line at all, even though it was only a foot, he violated M. S. A. 169.18 of the state highway traffic regulation act. This violation was prima facie evidence of negligence. A statutory violation constituting prima facie evidence of negligence prevails as a controlling evidentiary factor

against the violator only as long as there is an absence of evidence tending to show a reasonable ground for such violation. The burden of producing such evidence of justification is upon the violator, but the moment such evidence appears from any quarter whatever the prima facie case against the violator not only ceases thenceforth to have any validity but wholly vanishes from the litigation as an evidentiary factor, and thereupon the burden of going forward with the evidence shifts to the opposing litigant. Demmer v. Grunke, 230 Minn. 188, 42 N. W. (2d) 1; Olson v. Olson, 238 Minn. 102, 55 N. W. (2d) 706. Here the jury could reasonably find that decedent had a reasonable ground for the violation in that he was suddenly confronted with an emergency and that under the circumstances his course of conduct in entering the opposing traffic lane was justifiable. In finding such an emergency the jury could take into consideration that decedent could not see any part of defendant's truck until he was about 100 feet from the crest of the hill. There is no evidence that, when decedent could first see defendant's truck, he was not then wholly within his own south lane of travel. There are, however, as hereinafter set forth, certain physical facts which reasonably justify an inference that he was then wholly within his proper traffic lane. With the decedent only 100 feet from the hill crest, and with each truck going about 30 miles per hour, the two vehicles were approaching each other at a rate of almost 90 feet per second. Decedent was confronted with an emergency which demanded immediate action without the benefit of deliberation. If he stayed within his own lane of travel, he would inevitably collide with defendant's approaching truck. If he turned to his right he would hit the three-foot ditch and its embankment with the likely result that he would be crushed by his load of scrap iron. His only other alternative was to turn into the north lane to escape the collision. Decedent's truck as it was stopped at the point of impact was facing slightly to the northeast, and from this fact the jury could reasonably infer that decedent had in fact turned from his own lane of travel into the opposing lane to meet the emergency and that such conduct was

justifiable. Further evidence of his course of travel immediately prior to his turn to the left is found in the circumstance that the scrap iron broke through the front right-hand corner of his truck. In other words momentum carried the scrap iron straight forward to the east along the truck's line of travel prior to the moment when decedent suddenly turned the vehicle to the left in attempting to escape the crash.

■ Taking the view of the entire evidence most favorable to the verdict, inclusive of all evidentiary inferences to be reasonably drawn from the surrounding physical facts and circumstances, the jury could, under the rule of O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, justifiably disregard defendant's positive testimony. Stated in reverse, the rule of O'Leary v. Wangensteen, *supra,* and Hawkins v. Sauby, 48 Minn. .69, 50 N. W. 1015, is that a jury may disregard the positive testimony of a witness, although he is not contradicted by other witnesses, if his testimony is impeached and made improbable by reasonable inferences drawn from the surrounding physical facts and circumstances as disclosed by the record. See, Knuth v. Murphy, 237 Minn. 225, 54 N. W. (2d) 771.

Upon direct examination defendant testified that his truck had been so damaged that he "wouldn't accept it." He was later cross-examined as to what he meant when he said he wouldn't accept it. When he evaded a direct answer, he was asked if he meant that he wouldn't accept the truck from the insurance company. Upon motion, all reference to insurance was stricken. The subject was not pursued further. In Sander v. Dieseth, 230 Minn. 125, 126, 40 N. W. (2d) 844, 845, we said:

"Although we have never approved of a practice which brings a defendant's insurance to the attention of the jury, except in a limited way for certain restricted purposes (see, 4 Dunnell, Dig. & Supp. § 5252), we cannot say that a jury's knowledge of the existence of insurance is necessarily or even likely to be prejudicial in this day when the average citizen of sufficient intelligence and experience to be a fit juror knows that, as a general rule and with

few exceptions, contractors, automobile owners, and others of normal financial responsibility carry protective insurance."

The order of the trial court is affirmed.

Affirmed.

