## ROBERT BORRIS v. CLAUDE E. LEWIS AND ANOTHER.[1]

November 18, 1955.

No. 36,595.

*Gislason, Reim & Minium,* for appellant.
*Frundt & Hibbs,* for respondent.

NELSON, JUSTICE.

The plaintiff, Robert Borris, and his wife were passengers in an automobile owned and driven by one Claude E. Lewis when a collision occurred with another automobile owned and driven by one Otto Wille. The plaintiff brought an action against both drivers alleging that both were negligent as a cause in the operation of their respective automobiles at the time of the collision. The jury returned a verdict for $8,000 in favor of the plaintiff against both defendants. The defendant Lewis moved in the alternative for judgment notwithstanding the verdict or a new trial. The trial court

[1] Reported in 73 N. W. (2d) 131.

denied the motion and defendant Lewis appealed from the order and made the following assignment of errors:

1. The court erred in submitting to the jury the issue of defendant Claude Lewis' negligence since the evidence established that he was free from such negligence as a matter of law.

2. The court erred in submitting to the jury the issue of speed on the part of defendant Claude Lewis as a proximate cause of plaintiff's injuries.

3. The court erred in submitting to the jury the issue of lack of lookout on the part of defendant Claude Lewis as a proximate cause of plaintiff's injuries.

4. The court erred in submitting to the jury the issue of failure to dim headlights on the part of defendant Claude Lewis as a proximate cause of plaintiff's injuries.

5. The court erred in denying defendant's motion made at the close of plaintiff's testimony for a directed verdict in defendant Lewis' favor; said motion, grounds thereof, and ruling thereon as shown by the record specifically designating the same in the assignment.

6. The court erred in denying defendant's motion made at the close of all the testimony, for a directed verdict in defendant's favor; said motion, grounds thereof, and ruling thereon specifically designated by reference to the record.

7. The court erred in denying defendant's motion for judgment notwithstanding the verdict.

8. The court erred in denying defendant's motion for a new trial.

In considering the questions raised by defendant, the jury having rendered its verdict against him, the most favorable aspect must be ascribed to plaintiff's evidence.

Plaintiff, Robert Borris, and his wife, together with Mr. and Mrs. Lewis and their 3-year-old daughter, were returning to Easton, Minnesota, from Albert Lea, Minnesota, when the accident occurred. At the time Mrs. Lewis and her daughter were seated in the front seat beside Mr. Lewis, who was driving. The plaintiff and Mrs. Borris occupied the rear seat, Mr. Borris sitting on the plaintiff's left, behind the driver. The accident occurred at about 10:00 p. m.,

May 31, 1953, on a straight stretch of road that was tarvia surfaced and dry. The evening was clear. The two automobiles came together in a head-on collision at a point, with reference to driving lanes, approximately in the center of the highway.

Otto Wille, the other defendant, was driving his automobile in an easterly direction; the Lewis automobile was proceeding in a westerly direction. Wille testified that he first noticed the Lewis car when it was 30 or 40 feet away; that up to that moment he was driving on his own side of the road; and that he became momentarily blinded by the lights on the Lewis car, which admittedly had not been dimmed, so that he could no longer tell where he was upon the highway. He had admitted, however, that he had consumed intoxicating liquor, and there is testimony from which the jury could find that he was at the time under the influence of intoxicants.

The defendant Lewis testified at the trial that he did not see the Wille car until it was 30 or 40 or 50 feet away. When being examined at the taking of a pretrial deposition, he gave the distance as 30 feet, later 40 feet. He also stated that he could not recall dimming his lights; that when he first saw the Wille car he slammed on his brakes but did not pull his car to the right because it all happened so quickly that that was all he had a chance to do; and that he had only a half second to throw on his brakes. There was testimony as to skid marks left by the Lewis car indicating that these marks were on a straight line some 38 or 39 feet in length. Defendant Lewis testified that the Wille car was angling over the center line at about a 15- or 20-degree angle when the collision took place. He admitted, however, that with his bright lights on he could see 200 or 300 feet ahead; that he might have been looking at the baby; that it was a clear night and a good road; and that he had good lights. His testimony indicates that he was unable to give any explanation for his failure to see the Wille car sooner.

There was testimony by Mrs. Borris on direct examination that she saw the lights of the Wille car coming from the west for some distance. Later on cross-examination she stated that she saw the lights of the Wille car for a few seconds before the accident and not at any great distance; that, when she first saw the lights, she

noticed nothing unusual but knew they were going to hit as they came very close to the oncoming car.

There was testimony to the effect that the defendant Lewis had been cautioned by his wife about his driving speed both on the trip from Easton to Albert Lea and back to Easton that evening; that at times on the trip he was driving at 60 to 75 miles per hour; that he drove at about the same speed both ways; that the Borrises as passengers noticed the speedometer registering between 65 and 70 at one point on the return trip and that they heard speed mentioned at least three times from which it might be inferred that Lewis was driving too fast; and that Lewis had remarked that they had to be home fairly early because he had to get up at five o'clock the next morning. He did not make any impressive denials of speed when pressed on the matter; he said he would not deny it was 60 miles per hour but could not recall what the speed was.

The 3-year-old daughter of the Lewises had occupied the back seat with the Borrises for a while but was brought back into the front seat with the parents shortly before the accident. There was some testimony that the baby was fussy. The jury could well have drawn the inference under the circumstances that putting the child up front so close to the time of the accident could have been disturbing to the driver. There is testimony that the child continued to be fussy after being put in the front seat and that the parents were trying to settle her down.

It appears from the testimony that the black top itself, that is the tarvia, was 22 feet wide; that the center line was very dim; and that after the accident the Lewis car, which had been traveling in a westerly direction, was about 3 feet to the north of the center line; that the left front wheel of the Wille car was across the center line and the right wheel just about on the line; that it was on an angle partly across and partly back of the center line. The testimony on this last point, however, was not without conflict, one witness testifying on direct examination that the Wille car was on the south side of the center line but right up to it, and another witness testifying that the rear end of the Wille car was close to the center line, that the car was at no more than a 25-degree angle toward the north, and

that it was facing more in an easterly direction than in a northeasterly one after the accident.

The questions involved seem clear. First, was the defendant Lewis negligent as a contributing proximate cause in some degree, or in any degree, such negligence as a cause bringing about or setting in motion a set of circumstances resulting in the collision and the injuries suffered? Second, did the trial court commit error in submitting to the jury all or any of the issues with respect to the driving speed of the defendant Lewis, the element of lookout which a driver is charged with exercising under the law, and a failure to dim his bright lights, sufficiently in time, before the accident occurred?

It was for the jury to resolve the conflicts in the testimony and to determine the fact issues.

Defendant Lewis took exception to the court's charge as follows:

"The defendant Lewis respectfully excepts to that part of the charge which took from the jury the question of the assumption of risk and contributory negligence of the plaintiffs. The defendant Lewis also respectfully excepts to the charge of the Court in reading to the jury and submitting for their consideration the statute on speed and the statute on dimming of lights. * * *"

and assigns error in the court's charge under its assignments numbered 1, 2, 3, and 4.

In viewing the record as a whole, we believe the court fairly submitted the issues to the jury and that the charge is without prejudicial error. The record on its face provides the reasonable inference that the defendant Lewis was prima facie negligent in these respects; namely, that he violated M. S. A. 169.14 as to speed; that he failed to meet the statutory requirements (§ 169.61) for dimming his lights; and also that he was not keeping a proper lookout for traffic. In this regard it cannot be said under the circumstances that he was in the exercise of due care as a matter of law, and the jury might well find under the evidence that all of said prima facie acts of negligence in fact contributed proximately in some degree in causing the collision in question and the resulting damages. The record does

not disclose any convincing evidence by way of any explanation or excuse for any of said violations.

We have carefully considered the cases cited by defendant Lewis and we have come to the same conclusion as did the trial court in its memorandum—that all are distinguishable on the facts; that in most of the cases cited the only negligence involved was one of speed. Under the evidence in the instant case, the jury might well reasonably infer in its determination of the facts that the defendant Lewis was negligent in some degree by exceeding the speed limit, by failing to dim his lights, and in failing to keep a proper lookout; that thereby and in all the aforesaid respects he failed to exercise due care; and that the foregoing negligent acts combined in contributing to and proximately causing the results complained of. Ample support therefor may be found in the following authorities: Olson v. Olson, 238 Minn. 102, 55 N. W. (2d) 706; Gordon v. Pappas, 227 Minn. 95, 34 N. W. (2d) 293; Kapla v. Lehti, 225 Minn. 325, 30 N. W. (2d) 685.

Other errors assigned in the motion before the court below and not sufficiently urged on this appeal are omitted from consideration.

Affirmed.