FRED ANTLETZ v. H. H. SMITH.[1]

January 26, 1906.

Nos. 14,604—(160).

**Personal Injury—Indemnity—Insurance.**

Action to recover damages for personal injury. The employee notified his employer that the machine was dangerous, and was told to "go ahead and work, and I will fix it." In the afternoon of the same day he was injured. During the impaneling of the jury a controversy arose as to the right of the plaintiff to show that the defendant was insured by an indemnity insurance company, and the defendant claims that the plaintiff's attorney was guilty of misconduct. The jury returned a verdict for $1,500 for the plaintiff. On the evidence, *held:*

(a) That the danger was not so imminent that the plaintiff assumed the risk as a matter of law.

(b) That the plaintiff's attorney was not guilty of prejudicial misconduct. For the purpose of enabling him to intelligently select the jury, he had a right to learn whether the defendant was insured. Spoonick v. Backus-Brooks Co., 89 Minn. 354.

(c) The verdict was not excessive.

[1]Reported in 106 N. W. 517.

Action in the district court for Hennepin county to recover $3,000. for personal injuries. The case was tried before Holt, J., and a jury which rendered a verdict in favor of plaintiff for $1,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Keith, Evans, Thompson & Fairchild,* for appellant.

*F. D. Larrabee,* for respondent.

ELLIOTT, J.

This is an appeal from an order denying the defendant's motion for judgment notwithstanding the verdict or for a new trial. The action was brought to recover damages alleged to have been caused by the negligence of the defendant. The defendant at the time of the accident was operating a sawmill in the city of Minneapolis, and the plaintiff was engaged in operating a saw lath. The lath machine consisted of a saw table about a foot wide, about four feet long, and two feet high, in which were set three circular saws, nine inches in diameter, extending four inches above the table. By these saws "bolts" of wood, one and a half inches thick, from one half to six inches wide and four feet long, were cut into lath. The bolts were fed into the machine by two sets of feed rollers, one in front and one behind the saws. On the surface of the rolls there were lines of teeth, for the purpose of catching and holding the bolts and forcing them through the saws. These teeth, when new, were one-eighth of an inch long and half an inch apart. Running the bolts through the lath machine caused the teeth on the rolls to wear down and break off, and this finally rendered the machine dangerous to use. Between nine and ten o'clock of the day on which the plaintiff was injured, one of the bolts was thrown back because the teeth failed to hold. He reported this to the defendant's foreman and threatened to leave his employment unless the machine was fixed. The foreman said, "Go ahead, and I will fix it." The plaintiff continued his work and on the afternoon of the same day another bolt was thrown back and the index and middle fingers of his right hand were injured thereby.

The jury returned a verdict in favor of the plaintiff for $1,500. The defendant contends that (1) the plaintiff assumed the risk of

continuing work after receiving the promise to repair, (2) that the attorney for the plaintiff was guilty of misconduct which was prejudicial to the defense, and (3) that the verdict is excessive.

1. After the plaintiff notified his employer that the machine with which he was working was in a dangerous condition and received the promise to repair it, he had the right, in reliance on the promise, to continue his work for a reasonable time to enable his employer to fulfil his agreement, and during such time he did not assume the risk arising from and incident to such defect, unless the risk was so obvious and imminent that a person of ordinary prudence would not have incurred the same. Greene v. Minneapolis & St. Louis Ry. Co., 31 Minn. 248, 17 N. W. 378, 47 Am. Rep. 785; Lyberg v. Northern Pac. R. Co., 39 Minn. 15, 38 N. W. 632; Rothenberger v. Northwestern C. M. Co., 57 Minn. 461, 59 N. W. 531; Gray v. Red Lake Falls Lumber Co., 85 Minn. 24, 88 N. W. 24.

The only question, therefore, is whether the danger was so obvious and imminent as to resolve the assumption of risk into a question of law. Clearly it was a question for the jury.

That there was danger is evident from the result, but its imminence must be determined by the conditions as they presented themselves to the employee at the time. He was entitled to some extent to act upon the instructions of his employer. The wearing away of the teeth was the result of a gradual process. The device had not reached a condition in which it was certain to fail to work and thus cause the bolts to be thrown back. The throwing back of the bolt was still the exception. Ordinarily it worked all right, although the danger was ever present. A man of reasonable prudence might reasonably have assumed that, although there was danger, it was of a degree and character to which he could afford to subject himself for a reasonable time until the repairs could be made as promised by the employer. The degree of risk to which the employee may subject himself without becoming responsible for the consequences is not easy to determine, and unless the danger is very obvious and imminent it should be left for the jury to say whether the act was that of a person of ordinary prudence. We think this was such a case.

2. The alleged misconduct of the plaintiff's attorney is based upon what occurred during the impaneling of the jury. Each of the first three jurors called was asked by the plaintiff's counsel whether he was in any way interested in an accident insurance company. To these questions no objections were made. When another juror was called the plaintiff's attorney turned to the defendant's attorney and said,

> What is the name of the insurance company defending this case, the Travelers, isn't it?

Exception was taken to this question, and plaintiff's attorney then said,

> I wish it on record that I do not know whether they are insured or not.

The court said,

> Well, that cannot be tried, so it is no use mentioning that. You may inquire of the jurors whether they are acquainted with or interested in any insurance company.

Some further remarks were made with reference to the right of the attorney to appear for the defendant, to which exception was taken and sustained by the court.

It thus appears that the court ruled with the defendant, and the only question is whether the defendant was prejudiced by the mere fact of the discussion of the subject-matter in the presence of the jury. The learned trial court in his memorandum says,

> I cannot believe that this incident of anger on the attorney's part, or the questions propounded by him to jurors and ruled out, prejudiced the defendant in the least.

The question asked the three jurors was proper, and the right under some circumstances to call the defendant's attorney and interrogate him with reference to indemnity insurance was recognized in Spoonick v. Backus-Brooks Co., 89 Minn. 354, 358, 94 N. W. 1079. As there suggested, it is a right which is susceptible to abuse; but it is now settled that a plaintiff is entitled to learn the facts in reference to such insurance, in order to properly and intelligently examine the jurors. As

said in Spoonick v. Backus-Brooks Co., supra: "In order to secure to litigants unbiased and unprejudiced jurors, we are compelled to. hold that plaintiff's counsel had a right to ascertain whether there was such a relationship between the persons called as jurors, and the insurance company, a corporation vitally interested in the result, which would disqualify these persons, because by implication, they would be biased and prejudiced."

3. The respondent received a serious and permanent injury to his right hand. In view of his age and occupation, the nature, extent, and permanence of the injury, and the permanent reduction of his earning capacity, the rule that the amount of damages is peculiarly for the jury, and the approval of the verdict by the trial court, we are not able to say that the verdict is so excessive as to justify this court in interfering with it.

The order appealed from is affirmed.