## HILMA GRANRUS v. CROXTON MINING COMPANY.[1]

November 8, 1907.

Nos. 15,468—(189).

**Master and Servant—Question for Jury.**

The evidence was sufficient to go to the jury upon the question whether or not appellant was guilty of negligence in assigning respondent, an inexperienced, common laborer, to the work of loading ore cars and manipulating the same upon a gravity track, without giving him proper warning and instructions.

**Contributory Negligence—Evidence.**

The evidence supports the conclusion of the jury that decedent was not guilty of contributory negligence, did not assume the risks, and that he came to his death by reason of the fact that he had not been sufficiently instructed and warned with reference to the hazardous character of the work he was attempting to perform.

**Examination of Jurors.**

It does not conclusively appear that, during the examination of jurors as to their qualifications, the attorney for respondent did not proceed in good faith in questioning counsel for appellant as to whether appellant company carried casualty insurance.

**Charge to Jury.**

The charge, considered as a whole, correctly sets forth the law, although some parts did not contain complete statements of the principles applicable.

Action in the district court for St. Louis county by Hilma Granrus, as administratrix of the estate of Charles Granrus, deceased, to recover $5,000 for his death. The case was tried before Ensign, J., and a jury which found a verdict in favor of plaintiff for $2,400. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Coryate S. Wilson* and *Edmund M. Morgan,* for appellant.

*Miller & Clapp,* for respondent.

LEWIS, J.

The complaint alleges that Charles Granrus was employed by appellant as a common laborer in the underground working of its Crox-

[1] Reported in 113 N. W. 693.

ton mine; that on November 15, 1905, appellant ordered Granrus to leave his regular work and take the place of the top lander, which required him to fill ore cars at the shaft house and run them down a gravity track; that such work required a high degree of skill and experience, and was attended with unusual danger; that Granrus was inexperienced in the work; that while engaged in such services, and while taking down a car filled with ore, he fell from the car, which passed over him, causing injuries which resulted in his death; that the accident was due wholly to the negligence of appellant in failing to properly instruct, direct, and warn him, in failing to furnish adequate light, and in allowing débris to collect on the track.

1. The deceased was a Finlander, twenty four years old, had been in this country about three and one half years, was unable to speak the English language, and had never done other work than that of a common laborer. The work of a so-called "top lander" consisted in stopping a car under the chute, braking it with a block, assisting the ore to flow down out of the chute, and, when the car was loaded, to go down upon the ground, remove the block, start the car with a pinch bar, if it would not start of itself, climb upon the car, which was about ten feet high, and get over to the brake, in the operation of which he had to stand on a narrow board, eight inches wide and six feet long, located about seven feet above the rails. In order to properly control the car, it was customary to use a two-foot brake stick in operating the brake, for the purpose of more securely tightening it. No stationary outside lights were furnished, but certain lanterns, or torches, were where the top lander could get them and use the same according to his needs.

In the afternoon of the day of the accident, Granrus was directed by the mining captain to take the place of the top lander, one Laine, who was to be temporarily absent, and whom the captain instructed to properly direct Granrus about the work, but the evidence does not disclose that any instructions were given him how to operate the car, except that Laine told him to be careful so that no accident would happen, and the mining captain, Thomas, dropped down the first car himself, so as to show Granrus how it was done. It was about ten minutes of six o'clock in the evening when the accident occurred, and Granrus was taking down his second car. It was quite dark at that

time, and no one saw Granrus as he was handling the car; but after it had gone some distance other employees heard Granrus call for help, and, when they reached him, found that he had fallen from the car and had been run over by it. One witness testified that, when he got to him, Granrus said he was braking and trying to put the brake stick, or hand spike, into the brake, and it slipped, and he fell. The cars were of steel and wood, hopper bottomed, with a wheel hand brake, consisting of a perpendicular iron rod situated about the middle of one end of the car and connected at the bottom to a chain which controlled the brake shoes, surmounted by an iron wheel of five spokes, about a foot in diameter, which projected about four inches above the top edge of the car.

We decide without any hesitation that the manipulation of such heavy cars in the manner required in this work was attended with great danger, and that it was gross negligence to put an inexperienced common laborer at that sort of employment without giving specific instructions and directions. The evidence was sufficient to make an issue of fact for the jury upon these questions. Gray v. Commutator Co., 85 Minn. 463, 89 N. W. 322; Peterson v. American Grass Twine Co., 90 Minn. 343, 96 N. W. 913; Dell v. McGrath, 92 Minn. 187, 189, 99 N. W. 629.

2. The evidence discloses the fact that at least two lanterns, or torches, were kept at the shaft house for the use of the top lander in carrying on his work after dark; but it does not appear that the decedent was instructed as to the use of the torches, and, although it was quite dark, he did not carry, or attempt to carry, one with him in lowering the car. Appellant argues that it conclusively appears that the furnishing of light was a mere detail of the work assigned to Granrus, and open to his observation, and, inasmuch as the torch lights were in the shaft house for use, his failure to use them cannot be attributed to the master; and, further, that, even if it was negligence on the part of the master in failing to instruct him on the subject, Granrus was guilty of contributory negligence in attempting to carry on the work without proper light.

These positions are not well taken, and it was proper for the court to submit to the jury the question whether appellant was guilty of negligence in failing to furnish light, and in failing to give proper

instructions with respect thereto. This is apparent from the fact that, inasmuch as Granrus was required to carry on so hazardous an employment after dark, the duty rested upon the master to give him specific instructions and directions upon all points necessary in order to reduce the risk. It cannot be assumed, as a matter of law, that an ignorant and inexperienced common laborer would appreciate the necessity of having with him one of the torches, conceding that he knew where to get the same.

3. The evidence is sufficient to support the conclusions of the jury that the deceased fell because the hand spike slipped while he was attempting to fasten it in the brake, and that the reason thereof was because of inexperience and lack of proper instructions. He was required to stand upon a narrow eight-inch board some seven feet above the track, and turn the brake in such a way as to control the momentum of a car weighing more than one hundred thousand pounds. The brake wheel could be turned either by pushing or pulling, and in changing the hand spike to a different position it was necessary for the operator to push with his foot a certain hook, or catch, into a cogwheel on top of the foot board, in order to hold the brake in place. An inexperienced person, in attempting to adjust the hand spike under such circumstances, might very easily let it slip and so lose his balance, or make a misstep and fall. That Granrus did so, and that it was the cause of his fall, is reasonably certain. It was a question of fact, therefore, whether his injury and consequent death was the result of the negligence of the employer in failing to give the proper instructions, and the case does not come within the realm of conjecture.

4. Counsel for appellant, in examining the jurors, inquired of them if they were interested in any insurance or liability company. Counsel for respondent then asked appellant's counsel if there was any liability insurance in the case. The attorney was sworn as a witness, and against the objections of appellant stated that he was employed by an insurance company to defend the action. Appellant raises the point that the inquiry was not made in good faith, but merely for the purpose of prejudicing the defense. In Spoonick v. Backus-Brooks Co., 89 Minn. 354, 94 N. W. 1079, Antletz v. Smith, 97 Minn. 217, 106 N. W. 517, and Viou v. Brooks-Scanlon Lumber Co., 99 Minn. 97, 108 N. W. 891, it has been fully settled that, for the purpose of

examining jurors as to their qualifications, it is proper to show that the defendant carries liability in a particular insurance company, and may call the attorney appearing for the defendant as a witness to prove that fact. There is nothing in the record to warrant the charge that the examination was conducted in bad faith.

5. Error is assigned upon the ground that in a certain part of the court's instructions to the jury the court omitted consideration of what the servant should have known, and ignored the necessity of showing the master's actual or imputed knowledge of defendant's ignorance. The charge is very full and complete, and although the particular portion pointed out by appellant may, technically, be open to the criticism that it lacks completeness of statement, yet, when considered as a whole, the jury were fully informed on all the questions submitted. No errors.

Affirmed.