# HANS STORHAUGEN v. MOTOR TRUCK SERVICE COMPANY.[1]

April 1, 1927.

No. 25,903.

**Question of contributory negligence of automobile driver for the jury.**

1. In a collision upon a highway between an automobile driven by plaintiff and a motor bus by defendant's servant, it is *held* that the alleged contributory negligence of plaintiff was for the jury.

**Verdict for $6,000 did not indicate passion or prejudice.**

2. The verdict approved by the trial court cannot be held so excessive as to indicate passion or prejudice on the part of the jury.

**New trial not necessary because of counsel's reference to defendant's insurance.**

3. After being informed by defendant's counsel in the hearing of the court, but not of any juror, that defendant was insured by a certain insurer, plaintiff's counsel stated to the prospective jurors, preparatory to questioning them as to their qualifications to sit in the case, that it was an admitted fact that the insurer named had insured defendant. Such statement *held* not misconduct prejudicial to defendant meriting a new trial.

Appeal and Error, 4 C. J. p. 872 n. 19; p. 873 n. 21.
Damages, 17 C. J. p. 1091 n. 85.
Juries, 35 C. J. p. 394 n. 33.
Motor Vehicles, 28 Cyc. p. 48 n. 28; p. 49 n. 47.

See note in L. R. A. 1915F, 30; 8 R. C. L. 674; 2 R. C. L. Supp. 638; 4 R. C. L. Supp. 567; 5 R. C. L. Supp. 840; 6 R. C. L. Supp. 521.

[1]Reported in 213 N. W. 372.

Defendant appealed from an order of the district court for Morrison county, Parsons, J., denying its motion for judgment notwithstanding or a new trial. Affirmed.

*C. Rosenmeier* and *Lancaster, Simpson, Junell & Dorsey*, for appellant.

*Brown & Dell*, for respondent.

HOLT, J.

Plaintiff recovered a verdict for damages sustained when a passenger bus operated by defendant collided with a Ford car owned and driven by plaintiff upon a public highway near Staples. From the order denying judgment or a new trial defendant appeals.

The first proposition is that plaintiff's contributory negligence appeared as a matter of law. The accident occurred after dark on the evening of August 31, 1925. Plaintiff, a meat dealer at Motley, a few miles east of Staples, drove to Staples to replenish his stock. As he drove into Staples it was dusk and, attempting to turn on the lights of his car, he discovered something wrong therewith. He sought a garage, procured a light bulb; and the mechanic who fixed the lights testified that they functioned properly when plaintiff left. He got his meat and started for Motley. The highway was well-traveled, and was graded a width of about 30 feet. It was slightly graveled. The bus with three passengers was coming from Brainerd to Staples, and as it met plaintiff a short distance from Staples a collision took place. The driver of the bus, a passenger in the second seat, and one in the fourth seat testified that plaintiff's car was unlit and was north of the center of the highway. The driver said he thought plaintiff was traveling in the same direction as the bus and that he swung the bus to the left or south side of the road to pass plaintiff and at the same time plaintiff swerved south of the center line with the result that the left front parts of the two vehicles came together, plaintiff and his car being thrown into the mud in the ditch at the south edge of the road. Some corroboration is also found in alleged statements made by plaintiff as he came out of the ditch that his lights went out as he came up over the

hill from Staples, and by three young people who claim that after they met the bus they turned around and followed the bus to the point of collision and saw no lights come towards them ahead of the bus, and that they heard some statement of plaintiff to the effect that his lights went out. But, on the other hand, there was plaintiff's testimony that his car was properly lit, and that of one who drove behind the bus some 40 or 60 rods, as it approached the point of the collision and who claimed that he was the first one there. As this man was driving behind the bus he testified that he saw the lights on plaintiff's car approaching for some distance before it met the bus. This witness carried the driver and the three passengers into Staples and stated that he heard no conversation at the place of accident or on the way into Staples to the effect that plaintiff was on the wrong side of the road or that his car was unlit. In addition there were several men called by plaintiff who testified to having examined, on the day after the collision, the south edge of the road some few rods to the west from where plaintiff's car was pushed off into the ditch, and found the track of the right tire close to the south edge of the road. The plaintiff also testified that he was dazed and stunned when pitched into the ditch and could not remember what was said and done immediately after he was struck. We think the foregoing sufficiently indicates that the issue of plaintiff's negligence was for the jury.

Another assignment of error is that the verdict is so excessive as to show that passion and prejudice actuated the jury. Plaintiff was severely bruised. A wound over three inches deep entered an arm. Infection set in. The contusions and abrasions on one arm and the left leg were so deep-seated and severe that adhesions resulted between some of the muscles controlling those members and the adjacent tissue upon which the muscles glide, causing impairment of movement with pain attending attempts to use the members. The head of the femur of the right leg is claimed to have received an impacted fracture resulting in a misplacement which interferes with the free movement of the leg and causes suffering. The hearing of one ear is impaired. At the trial, seven months after the

accident, all the doctors agreed that it was necessary that medical attention and treatment be continued for some time in the future to relieve from some of the conditions from which plaintiff was then suffering. Plaintiff's experts are of the opinion that there are permanent injuries, and one of defendant's concedes that cure in every respect is not certain. The pain and suffering was very severe. For more than ten days opiates several times each day had to be administered. He was compelled to lie flat on his back for about four weeks, because the pain from his injuries was unendurable when in any other position. The infection in the arm developed a temperature up to 104 degrees. For about two weeks the doctor attended him twice a day, and afterwards less often. The doctor testified his services were worth $520. The experts for defendant placed a much lower value thereon. When allowance is made for a reasonable compensation for future treatment, and the services so far rendered, and the damage to the car, it may be roughly estimated that the jury must have allowed about $6,000 of the verdict for loss of time, pain and suffering, and permanent impairment of bodily functions. We are not prepared to say this amount is so excessive as to evince that passion and prejudice moved the jury, approved as it is by the experienced trial court, who had the advantage over us of noting the appearance and movements of plaintiff.

One assignment of error charges misconduct of plaintiff's counsel. Before interrogating the jurors called to sit as to their qualifications, counsel for plaintiff asked counsel for defendant whether defendant was insured against loss on the cause of action in suit and, if so, the name of the company. The inquiry was answered. Then turning to the jurors in the box, plaintiff's counsel stated: "It is an admitted fact * * * that the Ocean Accident & Guaranty Corporation, Limited, insures the defendant." Defendant excepted to the statement. The court said that in view of the objection raised he would instruct plaintiff's counsel in his examination of the jurors as to their qualifications not to mention the fact of the defendant being insured. Thereupon counsel for defendant said: "It was admitted by counsel for defendant in the presence of the court and

counsel for the plaintiff that the Ocean Accident & Guaranty Corporation, Limited, insured the defendant in this case in order to avoid the necessity for laying a foundation for interrogation of jurors with regard to their interest in such insurance company, and defendant's exception is limited to the statement made by counsel that the defendant was so insured, upon the ground that that is not one of the issues of the case and is highly prejudicial."

Whether or not misconduct of counsel of the prevailing party should entitle the other to a new trial is largely left to the sound discretion of the trial court, and a statement such as was made in the present instance, even though it should be held improper, does not call for a new trial if found to have been made in good faith. Our decisions bearing upon that matter are: Spoonick v. Backus-Brooks Co. 89 Minn. 354, 94 N. W. 1079; Antletz v. Smith, 97 Minn. 217, 106 N. W. 517; Viou v. Brooks-Scanlon Lbr. Co. 99 Minn. 97, 108 N. W. 891, 9 Ann. Cas. 318; Granrus v. Croxton Min. Co. 102 Minn. 325, 113 N. W. 693; Gracz v. Anderson, 104 Minn. 476, 116 N. W. 1116; Heydman v. Red Wing Brick Co. 112 Minn. 158, 127 N. W. 561; N. W. Fuel Co. v. M. St. Ry. Co. 134 Minn. 378, 159 N. W. 832.

Counsel for defendant sought the supposed advantage for his client resulting from the procedure suggested in the Viou case, namely to keep from the jury the fact that defendant was insured. It is thought that a jury is inclined to find a verdict upon less evidence and in a more generous amount if an insurance company rather than the wrongdoer has to pay it. It may be a question whether bus companies operating their large and speedy vehicles upon our highways are looked upon more favorably by the ordinary jurors who have occasion to travel thereon than insurance companies which such jurors also patronize.

But it is difficult to find anything which may be held prejudicial in the statement. Defendant is in precisely the same position as if the information it voluntarily gave had been elicited by calling its counsel to the witness stand and in the hearing of the jury asking if it carried insurance and the name of the insurer. Again, assum-

ing that the suggestion in the Viou case had been literally followed and questions had been put to prospective jurors as to their interest in the Ocean Accident & Guaranty Corporation, Limited, would not every juror of average intelligence infer that such corporation was an insurer and interested in the verdict to be rendered? Prudent and responsible jurors owning automobiles generally carry or recognize the need of insurance. If the jurors would not draw the inference suggested from the questions asked as to the corporation mentioned, there is no telling what erroneous conclusions they might come to—conclusions perhaps far more prejudicial than knowledge of the actual facts, for it cannot be assumed that jurors regard the inquiries of attorneys to be made with no purpose at all.

As a practical question it is submitted that justice and fair dealing would not suffer by a candid disclosure to the jury as to who are the real parties to the litigation, who is the real defendant or the one who must pay if a verdict is for the plaintiff; and when such facts are disclosed, that court and counsel thereafter see to it that no argument or contention be made that because of the insurance the verdict should be otherwise than it would be were there no insurance. In fact, the parties would be entitled to an instruction that in determining who is entitled to a verdict the issues should be treated exactly as if there was no insurance, nor should the recovery, if any, be lessened or increased one penny because of insurance. It is conceivable that there are cases where an insured defendant may actually desire a plaintiff made whole so long as it be done at the expense of the insurance company, and there may be cases of downright collusion between a plaintiff and a defendant to mulct the latter's insurer.

In the case at bar when the fact was disclosed that defendant was insured by the company named, the learned trial court did not permit any further questioning emphasizing the fact of insurance, and there is nothing in the record tending to show that the subject of insurance was ever mentioned during the trial, so that there is nothing meriting the disapproval meted out in Viita v. Fleming, 132 Minn. 128, 155 N. W. 1077, L. R. A. 1916D, 644, Ann. Cas.

1917E, 678. We are unable to see any legal prejudice in the charged misconduct of plaintiff's attorney.

The order is affirmed.