# IRENE SIK LESEWSKI v. HANS NIELSEN AND ANOTHER, d.b.a. NIELSEN'S GRAIN COMPANY, AND ANOTHER.

95 N. W. (2d) 13.

February 6, 1959—No. 37,551.

*Meehl, Catlin & Wiltrout,* for appellants.
*A. Gordon Forbes* and *English & Velta,* for respondent.

FRANK T. GALLAGHER, JUSTICE.
Appeal from an order denying defendants' motion for a new trial.

The proceeding was occasioned by an accident occurring on July 29, 1955, when the plaintiff was riding as a passenger in the rear seat of a car which was struck from the rear by defendants' truck traveling at a speed of from 45 to 50 miles an hour. Plaintiff at the time of the accident was 21 years of age and had just completed her nurse's training. She contends that as a result of the accident she suffered back injuries. The jury returned a verdict of $23,000. The only questions here relate to damages because liability is not now in dispute.

Three issues are presented by this appeal and will be discussed in the following order: (1) Did the conduct of the trial court in disclosing to the prospective jurors that an insurance company might be interested in the result of the action constitute prejudicial error? (2) Was the verdict excessive, appearing to have been given under the influence of passion and prejudice? (3) Was the verdict excessive because it was contrary to law and not justified by the evidence?

■ District Court Rule 31 (1957 M. S. A. p. 4643), expressive of a common practice among the district courts of Minnesota,[1] provides that in all civil jury cases in which an insurance company or companies are not parties, but are interested in the defense or outcome of the action, counsel for such company or companies may, and upon the request of the presiding judge shall, disclose the name of such company or companies as well as of their local agent or agents. This must be done out of hearing of the jury. When this disclosure is made, no inquiry shall be permitted by counsel as to such names in the hearing of the jury, nor shall disclosure be made to the jury that such insurance company is interested in the action. In the examination of the jurors by counsel as to their qualifications, the jurors may be asked collectively whether any of them have any interest as policyholders, stockholders, officers, agents, or otherwise in the insurance company or companies interested, but such question shall not be repeated to each individual juror. The rule further provides that such questioning may be conducted by the presiding judge in his discretion rather than by the

---

[1]See, M. S. A. 484.33; also see, Sheldon v. Risedorph, 23 Minn. 518; Gale v. Seifert, 39 Minn. 171, 39 N. W. 69; Nye v. Swan, 42 Minn. 243, 44 N. W. 9; Gillette-Herzog Mfg. Co. v. Ashton, 55 Minn. 75, 56 N. W. 576.

counsel. Such discretion was exercised in the instant case.

Defendant argues that Rom v. Calhoun, 227 Minn. 143, 34 N. W. (2d) 359, decided after Rule 31 became effective, establishes the scope of inquiry provided for by the above rule. In that case the following question was allowed (227 Minn. 147, 34 N. W. [2d] 361): "I ask you jurors if any of you have business connections with the State Automobile Insurance Association of Des Moines, Iowa." In the instant case the trial judge made the following statement to the prospective jurors:

"* * * the court has been advised that a certain company known as the National Indemnity Company of Omaha, an insurance company, may be interested in the result of this action. If it happens that anyone of you are connected with this company either as agents or employees, or if any member of your immediate family is connected with that company in any way either as agents or employees, will you indicate by holding up your hand.

"Are any of you policyholders in that company? Have any policy of insurance as far as you know? I will ask you if any of you are agents or employees of any insurance company of any kind? The record may show that there was no response from the jury upon interrogation by the court."

While the words used by the trial court in the instant case may not have represented the best choice, we realize that some latitude must be permitted the courts in such matters. In our opinion a better practice would be to ask whether a prospective juror has any interest as policyholder, stockholder, officer, or otherwise in the company or companies involved. However, it is our opinion that the questions in the instant case could not be considered prejudicial error on the basis of Martin v. Schiska, 183 Minn. 256, 236 N. W. 312, wherein it was recognized by this court that when a prospective juror hears inquiry as to interest in a named insurance company he knows that the named company has insured the owner of the automobile involved against liability. Further, it was stated in that case that if it is apparent that the jury's information regarding the existence of insurance is not used to inflame or prejudice the jury in favor of either of the nominal or actual parties to the litiga-

tion the fact that such information was imparted in open court should not call for a new trial. The record in the instant case does not indicate that the information as disclosed by the trial court was in any way used to inflame or prejudice the jury. Accordingly we are of the opinion that here such statement does not constitute prejudicial error.

■ The defendant contends that the verdict of $23,000 was excessive either under Rule 59.01(5) of Rules of Civil Procedure on the ground that it appears to have been given under the influence of passion or prejudice or under Rule 59.01(7) on the ground that it is not justified by the evidence or is contrary to law.

An examination of the record as well as the trial court's memorandum indicates that there is nothing in the record which shows that the verdict was the result of passion and prejudice nor does the size of the verdict alone so indicate.

Although passion and prejudice are absent, appropriate action may be necessary where the evidence does not justify the amount of a verdict. Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67, 53 A. L. R. (2d) 1091. While it has been previously stated by this court that it is reluctant to disturb a verdict as excessive in a case where the amount has the approval of the trial court, we have also said that such reluctance shall not permit all verdicts to stand. Propper v. Chicago, R. I. & P. R. Co. 237 Minn. 386, 54 N. W. (2d) 840, 35 A. L. R. (2d) 459. Also this court has stated that the peculiar facts of each case must serve to measure the damages. Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793.

The record shows that plaintiff at the time of the accident was 21 years of age; she had just finished her nurse's training and was making plans and arrangements for her forthcoming marriage and employment as a registered nurse. At the time of trial, her life expectancy was 41.53 years.

After the accident on July 29, 1955, plaintiff complained of a pain in her back. She contacted Dr. L. J. Monson the following day and he ordered her hospitalized. Examination at the hospital revealed tenderness to pressure in the lower back and some muscle spasm. She was released 2 days later.

Up to and including the time of the trial plaintiff had been examined

or treated by six different doctors, five of whom testified in her behalf at the trial. Dr. Monson, who had treated her initially, was of the opinion that she was suffering from a herniated intervertebral disc. His diagnosis was based chiefly on subjective symptoms or what plaintiff had told him, except for a finding of muscle spasm and tenderness in the lower back which was based on objective physical findings.

Dr. Nydahl, an orthopedic surgeon who had been suggested by Dr. Monson, had examined plaintiff on six separate occasions, November 8, 1955, January 9, February 3, March 12, 1956, April 2 and August 23, 1957. On February 3, 1956, Dr. Nydahl applied a flexion plaster cast which she wore until March 29, the following month. Originally Dr. Nydahl had two diagnostic impressions. However, after treating her for a period of time he was of the opinion that:

"* * * she was suffering from a herniated intervertebral disc at L4-L5 or at L5-S1, fifth lumbar and sixth cervical vertebra on the right side and again in simple terms would be pain in the lower right back, in the small of the back,"

and that such injury was a result of the automobile accident of July 29, 1955. Dr. Nydahl stated that he was "reasonably sure" of his diagnosis. He was further of the opinion that plaintiff is suffering from 25-percent permanent partial disability.

Regarding the objective or subjective nature of his findings forming the basis for the diagnosis, he testified as follows:

"Q. And that test you made which are more or less subjective tests, are they not?

"A. That is correct.

"Q. And when we use the word subjective we mean something that the patient told you, isn't it?

"A. That is correct.

"Q. And when you use the word objective, you mean something you can see as a medical man?

"A. That is correct.

"Q. Now in all these tests you made on Irene you have not found anything objective to indicate this herniated disc, have you?

"A. Yes, the straight leg raising test has been consistently positive."

Dr. Bickel, an orthopedic surgeon, examined plaintiff on October 16 and December 14, 1955, and August 30, 1957. After the first examination Dr. Bickel concluded there was "a suspicion of slight muscle spasm in her back. * * * The X-rays were felt to be entirely negative for any fracture and her routine laboratory tests were all within normal limits." The second examination was entirely negative. The third examination, which included a neurological examination, did not reveal anything different from the two previous examinations.

Dr. Reiley, another orthopedic surgeon, examined her on April 29 and September 3, 1957, X-rays were negative except for a slight curvature of the lumbar spine which had nothing to do with plaintiff's present condition. He was of the opinion that she had "an irritation of the first sacral roots on both sides" and that this condition could have resulted from a trauma or a blow of some type to the injured area. His second examination revealed no change in her condition and he was further of the opinion that plaintiff was suffering from a "20 to 30 per cent loss of use of the back as a whole based on the fact of the necessity for use of a garment support plus the nerve root irritation which further limits her activities." His diagnosis was based on a finding of tenderness over the area.

Dr. Engwall, the plaintiff's final medical witness, examined plaintiff September 13 and 16, 1957, and stated he found symptoms of a herniated disc.

Dr. Ford, defendant's only medical witness, had examined plaintiff during the trial and testified that there was possibly a minimal sacroiliac condition and a minimum spasm in the back but there was no diagnosis of a ruptured disc.

None of the doctors administered a myelogram which according to the testimony is 85 percent accurate in detecting the presence of a herniated disc, although Dr. Nydahl testified he would administer the test prior to the plaintiff undergoing surgery as a corrective measure for the herniated disc.

The record discloses that plaintiff spent approximately a total of 20 days in various hospitals on 5 separate occasions; that she suffered extreme pain and has been unable to carry out her duties as a housewife as a result of the accident. Plaintiff, as well as her mother-in-law,

testified that she had been confined to bed as a result of her disability for a period of 270 days between the time of the accident and the time of the trial. She explained, however, that some of these days were occasioned by her pregnancy. Plaintiff has sustained $858.40 special damages.

Plaintiff's injuries as a result of the accident were centered in the soft tissue of the lower back with the exception of a bruise on her head and knees. The symptoms of her injury were primarily subjective. This court has previously stated "Where proof of damages is by subjective symptoms only, a sizeable verdict is subjected to close scrutiny." Propper v. Chicago, R. I. & P. R. Co. 237 Minn. 406, 54 N. W. (2d) 852, and cases cited therein. We are of the opinion here that a verdict of $23,000 is excessive where the injury affects only the soft tissue and proof of damage is based primarily on subjective symptoms.

The verdict is set aside and a new trial granted unless within 10 days after the filing of the remittitur in the district court plaintiff files a written consent to the reduction of the verdict to the sum of $18,000. If such consent is so filed the verdict as reduced will stand and the order denying a new trial will be and is affirmed.

DELL, CHIEF JUSTICE (concurring).

Based on such cases as Storhaugen v. Motor Truck Service Co. 171 Minn. 47, 213 N. W. 372; Martin v. Schiska, 183 Minn. 256, 236 N. W. 312; and Odegard v. Connolly, 211 Minn. 342, 1 N. W. (2d) 137, all written by the late Mr. Justice Holt, I am of the opinion that the statement of the trial judge made to the prospective jurors while they were being examined, which is quoted in the majority opinion, was in all respects proper.

District Court Rule 31 (1957 M. S. A. p. 4643) came into existence because of Prescott v. Swanson, 197 Minn. 325, 267 N. W. 251.[2] The practice suggested in that opinion and district court rule was found unworkable and cumbersome, particularly in rural areas where most jurors were stockholders in creameries, oil companies, farm insurance companies, cooperative stores, elevators, telephone companies, and numerous other corporations. To extricate this type of company and

---

[2]See, Santee v. Haggart Const. Co. 202 Minn. 361, 278 N. W. 520.

to determine whether prospective jurors were interested in the insurance company involved became so burdensome, and in some cases prejudicial, that the procedure was largely abandoned.

In McKeown v. Argetsinger, 202 Minn. 595, 604, 279 N. W. 402, 407, 116 A. L. R. 398, this court stated:

"* * * Plaintiff had the right to interrogate prospective jurors for the purpose of discovering whether they were interested in defendant's insurer, and to show that defendant was being defended by the insurer as part of the inquiry."

Rom v. Calhoun, 227 Minn. 143, 34 N. W. (2d) 359, is clearly distinguishable. In that case in chambers counsel for defendant gave the name of the insurance company insuring defendant but stated that the company denied liability because the insured had not reported the accident promptly and objected to plaintiff's counsel questioning the jurors concerning their interest in the company. Defendant's counsel conceded that he was employed by the insurance company but would not flatly state that the company was not interested in the case. Upon returning to the courtroom and in examining the jurors, plaintiff's counsel asked whether any of them were interested in the named insurance company as the trial judge stated might be done. Thereupon counsel for defendant made an objection calculated to impress upon the jury that the company had denied liability and that the question asked was not justified and was made for the purpose of prejudicing the jury. This court reversed since (227 Minn. 147, 34 N. W. [2d] 362) "There was no justification for imputing to plaintiff's counsel any impropriety or unfair tactics in following the trial court's decision on the matter."

Nowadays jurors know that generally speaking insurance companies are interested in all personal injury actions. In my opinion the rule ought to be that either the court or counsel may inform the jury of the name of the company, stating that it may be interested in the outcome of the litigation, and beyond that nothing further should be said. I concur in the result only.