Carol A. BUTTZ, et al., Appellants,

v.

David Lynn BERGESON, Respondent.

No. C8-86-17.

Court of Appeals of Minnesota.

Sept. 9, 1986.

Todd P. Young, St. Paul, for appellants.

David B. Orfield, Laura J. Hanson, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

Appellants Carol and Robert Buttz brought this action against respondent David Bergeson to collect damages for injuries that Carol Buttz sustained in an automobile accident. The jury awarded non-economic damages of $2500, future medical expenses of $250 and found a permanent injury. The jury further found that Carol Buttz had no loss of earning capacity and that her husband Robert Buttz incurred no damages. The trial court denied appellants' motion for additur or, in the alternative, a new trial. Judgment was entered in favor of appellants in the amount of $2750 plus costs and disbursements. On appeal, appellants argue that (1) the jury's verdict is perverse; (2) the trial court erred in striking the testimony of one of appellants' witnesses; and (3) the trial court erred in excluding positives of x-rays that were already in evidence. We affirm.

## FACTS

On March 13, 1981, respondent hit the rear of Carol Buttz's car while she was stopped at an intersection waiting to make a left turn. Respondent was traveling between twenty-five and thirty miles per hour. At the time of the accident, appellant was seven and one-half months pregnant. When the impact occurred, appellant's stomach hit the steering wheel, her glasses flew off and her head jerked forward and back. Appellants' three-year-old daughter was sitting in the back seat and was uninjured.

Appellant got out of the car immediately after the accident. After riding home in the tow truck that towed her car, she went to the hospital. At the hospital, the fetus was determined to be uninjured. Appellant complained of a headache and neck pain. Her medical records state that she had no muscle spasm in her back or neck. No x-rays were taken because of her pregnancy. She was discharged after about an hour and was given a neck collar and Tylenol.

After taking two days off, appellant returned to her part-time nursing job at Bethesda Luthern Hospital. She continued working part-time until the day before the baby was born in May. During this time, she had intermittent pain in her neck and her right shoulder and arm depending upon what she was doing. For four or five weeks preceding the delivery, she wore a brace on her right hand because her hand was sometimes numb and tingling.

After May, her hand got a little better. She returned to work after about three months of maternity leave. She still gets headaches and has neck and shoulder pain depending upon her activity. Her head movements are sometimes restricted. Lifting and pushing heavy things such as grocery bags and hospital carts particularly bothers her as well as cold and damp weather. She now avoids carrying her children. Her husband has to do more of the housework than he did before.

Since the accident, appellant has not been able to play volleyball or waterski, two activities which she used to do. She was an avid knitter, but now no longer knits because knitting causes her right side to ache and her right hand to go numb. Her hand also goes numb when she writes or does any other strenuous activity with her hand. For pain relief, she takes analgesics.

In September 1981, appellants' family physician had some x-rays taken of appellant's cervical spine. The x-rays were normal. She then had two or three weeks of physical therapy at Bethesda Luthern Hospital. The therapy provided temporary relief.

In September 1982, Dr. Essam Awad, a physical rehabilitative specialist, examined appellant and diagnosed a cervical sprain as a result of the accident. He also found some muscle spasm. In August 1983, Dr. Awad took some x-rays and the x-rays confirmed his previous diagnosis. At that time, he prescribed muscle relaxants, more physical therapy and cervical neck traction. The traction was painful and did not provide any relief.

When Dr. Awad last examined appellant in December 1984, he found everything normal except for moderate tenderness in her third through sixth vertebrae and her right upper arm muscles. He also found moderate muscle spasm in her right paracervical muscles and right upper trapezius.

Dr. Awad testified that, because muscle spasms and vertebrae tenderness can gradually develop over time, his diagnosis was not inconsistent with either the fact that Carol Buttz had no muscle spasm immediately after the accident or the fact that the 1981 x-rays were normal.

Dr. Awad had an opinion that appellant's injury resulted in a ten percent permanent partial disability of her cervical spine and the injury will cause degenerative arthritis in the future. He stated that future treatment will include pain relief medications and cervical traction.

In February 1985, Dr. Leonard Titrud, a neurological surgeon, examined appellant in relation to this lawsuit. He found some muscle spasm in the shoulder area and tenderness in some of her vertebrae. Appellant's neck movements were moderately limited and muscle strength in her right hand and arm was weaker than normal. Dr. Titrud's diagnosis was generally consistent with Dr. Awad's. He calculated that as a result of the injury, appellant had a twenty-five percent permanent partial disability of her spine and a twenty percent permanent partial disability of her right upper extremity. Dr. Titrud had the opinion that the injury could have gradually developed over time. He further testified that future medical care would include annual or biannual appointments with Dr. Awad and physical therapy about two weeks per year.

Dr. William Bingham, a neurosurgeon, also testified as a witness for appellants. He viewed both sets of x-rays and opined that it revealed an abnormal flattening of the spinal curve. He could not give an opinion as to whether the flattening was permanent, but he stated that the evidence of injury so long after the accident suggested some degree of permanence. He

also testified that the narrowing of the disc space between appellant's fifth and sixth vertebrae will create future problems.

Bergeson's expert witness, Dr. Frank Babb, who is an orthopedic surgeon, examined appellant in December 1984. He found no muscle spasm and no abnormalities, although he did find discomfort in one muscle on her right side. He viewed the x-rays admitted into evidence and found no abnormality. In his opinion, there was no evidence of any injury attributable to the accident and appellant did not need any future medical care.

Vera Miller, a Bethesda Luthern Hospital physical therapist, testified about her treatments of appellant which were recommended by another physician. Appellant had five sessions with Miller in June 1985. Miller described tightness in both upper trapezius with a muscle spasm on the right. After sustaining an objection by respondent's attorney, the trial court struck Miller's testimony.

## ISSUES

1. Is the jury's verdict perverse and inconsistent?

2. Did the trial court err in striking the physical therapist's testimony?

3. Did the trial court err in excluding the positives of the x-rays?

## ANALYSIS

### I.

*Irreconcilable verdict*

Appellants first argue that the jury's verdict is perverse and inconsistent. Appellants assert that a finding of permanent injury is inconsistent with the jury's non-economic damages award of $2,500 and future medical expenses award of $250.

■ Answers to a special verdict question will only be set aside when perverse and palpably contrary to the evidence. *Hauenstein v. Loctite Corp.,* 347 N.W.2d 272, 275 (Minn.1984). The test is whether the answers to the special verdict questions

can be reconciled in any reasonable manner consistent with the evidence and its fair inferences. *Reese v. Henke,* 277 Minn. 151, 155, 152 N.W.2d 63, 66 (1967).

■ The trial court held that the jury's findings could be reconciled with the evidence. We agree. Based upon the evidence, the jury could have found a permanent injury and yet only awarded damages of $2750. There is evidence that appellant has some kind of permanent injury. However, the evidence is not conclusive on the seriousness of the injury. Much of the testimony revolved around subjective symptoms and claims of diminution of normal activities. In light of the jury's finding that there was a permanent injury, the dollar figure of the award was conservative. However, the trial court which viewed the evidence and heard the witnesses did not declare the damage portion of the verdict inadequate as a matter of law. On review, we cannot say that the trial court abused its discretion in denying the motion for a new trial or an additur. The trial court has the broadest discretion in determining whether a new trial should be granted on the basis of adequacy of the damages. *Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 119, 257 N.W.2d 679, 684 (1977); *Bisbee v. Ruppert,* 306 Minn. 39, 48–49, 235 N.W.2d 364, 371 (1975). *See also Hauenstein v. Loctite Corp.,* 347 N.W.2d 272, 275 (Minn.1984) (if answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed). Given the wide deference accorded a jury's conclusion as to how much money will adequately compensate a plaintiff, we agree with the trial court that the jury could reasonably have concluded that the claimed limitations arising from the injuries did not give rise to a large sum of monetary damage.

The award of $250 for future medical expenses is not necessarily inconsistent with the evidence. Even though two of appellants' expert witnesses testified that appellant would need additional physical therapy, cervical traction and pain relievers, there was also evidence that no treat-

ment could really help her injury. Physical therapy may provide only temporary relief and previous traction had been painful and had provided no relief. Based upon the evidence, the jury could have determined that neither physical therapy nor traction was beneficial and that there was nothing Carol Buttz could do to relieve her pain other than take analgesics.

Appellants cite *Carufel v. Steven*, 293 N.W.2d 47 Minn. (1980), in support of their argument that the jury's verdict is perverse. In *Carufel*, the supreme court could not reconcile a jury's finding of no permanent injury with a high damages award. *Carufel* does not control the result in this case. Here, the jury's findings are the inverse of the *Carufel* jury's findings and the facts are different. Based upon the conflicting evidence presented, the jury could have reasonably found that, although appellant's injury was permanent, her damages were not high.

## II.

*Foundation*

■ Appellants also argue that the trial court erred in excluding Vera Miller's testimony about her physical therapy treatments of Carol's neck and upper shoulders.

After sustaining an objection by respondent's attorney, the trial court struck the physical therapist's testimony because respondent argued that there was no medical testimony that the treatments were connected with the 1981 accident.

We find no support for this evidentiary ruling and conclude that the trial court erred in striking the testimony. *See Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983) (admissibility was made conditional on further offer of proof, and evidence was properly excluded when no further offers of proof were made).

Respondent argues that the ruling was proper based upon relevancy grounds. We disagree. Minn.R.Evid. 401 takes a liberal approach to questions of relevancy. Minn.R.Evid. 401 committe comment. "A slight probative tendency is sufficient under rule 401." *Id*.

Here, appellant went to Miller with a doctor's order for heat and ultrasound treatments on her neck and upper shoulders for purposes of relieving a muscle spasm. Appellants' experts made a causal connection between the 1981 accident and the kind of pain for which Miller treated appellant. There is no evidence that the treatments were required because of something other than the 1981 accident. Based upon this record, the better practice would have been to allow appellant's therapist to testify.

■ Despite our conclusion that the trial court erred in excluding the physical therapist's testimony, no new trial is required. We cannot conclude that the physical therapist's testimony "might reasonably have changed the result of the trial" if it had not been stricken. *See Jenson*, 335 N.W.2d at 725 (construing Minn.R.Civ.P. 61).

The physical therapist briefly testified about the physical therapy that appellant had in June 1985. She did not give any medical opinion about the nature of appellant's injury. The import of her testimony was that it informed the jury about appellant's ongoing treatment. There was, however, other similar evidence that was admitted at trial. Appellant, as well as her expert witnesses, testified about other physical therapy treatments. Further, appellants' expert witnesses testified about the need for future ongoing treatment. We find no reversible error.

## III.

*X-rays*

■ Appellants also argue that the trial court erred in excluding some positives of x-rays that were already in evidence. At trial, appellants offered the positives while Dr. Bingham was testifying. Dr. Bingham testified that the positives were "adequate copies" of the x-rays. Although it would not have been error to admit the positives into evidence, we cannot say the trial court abused its discretion in excluding them.

*See Jenson*, 335 N.W.2d at 725. Since the x-rays were in evidence and the physician testifying gave a modest, but sufficient, foundation for the positives, they could have come in. However, the record indicates that the x-ray positives were cumulative and would not have revealed appellant's injuries differently than did the admitted x-rays. Dr. Bingham had no difficulty testifying about appellant's injury using the x-rays, instead of the positives. We cannot see any prejudice to appellants' case.

### DECISION

The jury verdict on damages, although conservative, was not inadequate as a matter of law. The trial court's evidentiary rulings do not require a new trial.

Affirmed.