**Adrian PULKRABEK, Appellant,**

v.

**Roger JOHNSON, Respondent.**

**No. C7–87–1881.**

Court of Appeals of Minnesota.

Feb. 2, 1988.

Kenneth F. Johannson, Crookston, for appellant.

Steven J. Cahill, Cahill and Maring, P.A., Moorhead, for respondent.

Considered and decided by SEDGWICK, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

SEDGWICK, Judge.

In this action for damages caused by a dog bite, appellant Adrian Pulkrabek challenges the sufficiency of the damages awarded him. Respondent Roger Johnson seeks review of the trial court's grant of conditional additur. We reverse the grant of additur.

### FACTS

On April 1, 1985, Pulkrabek was petting Johnson's labrador retriever when the dog suddenly bit his upper left lip. Pulkrabek was then a sixteen-year-old high school student, and he was visiting Johnson's son.

Since Johnson admitted liability, trial was on damages only. Pulkrabek did not seek or introduce evidence of special damages, which he claims were $1,288, because of the collateral source statute. Minn.Stat. § 548.36 (1986). The following evidence was offered on the issue of general damages.

After being bitten, Pulkrabek was taken to a hospital, where a plastic surgeon repaired his lip by administering local anesthesia and suturing the upper lip to the skin. Dr. Lamb, another plastic surgeon, testified the laceration went entirely through the lip, creating a horizontal, oval-shaped defect, approximately two and one half by two centimeters, where the upper

lip meets the skin. Pulkrabek described the missing piece as being the size of a quarter, and his father testified it was about the size of a thumbnail.

The wound required local care over the next several months. It healed but left a "defect": a thinning of the lip and a scar. In October 1986, Dr. Lamb successfully performed a surgical revision of the defect to improve the lip's appearance. A lump on the inside of the upper lip was reduced and the outer lip realigned.

Dr. Lamb performed follow-up treatments over the next nine months. He believes "the result was quite satisfactory but [Pulkrabek] still has a scar that is conspicuous or slightly conspicuous of the left upper lip." Dr. Lamb defined a conspicuous scar as one "that would be readily observed to casual observation at a conversational distance of about three feet." Dr. Lamb believed Pulkrabek would not have trouble with his lip's functioning if he doesn't require "special use" of it, but he may have a "little bit of numbness in the midline" of the lip.

Pulkrabek testified his lip felt numb when it was bit and he did not start to feel pain until the novocaine wore off after the first treatment. He continued to have pain, swelling and difficulty eating and sleeping for two weeks after the bite.

Pulkrabek had about the same amount of difficulties after the surgical revision. He can still feel a lump on the inside of his lip with his tongue. He does not feel pain or have difficulty eating now.

During the school year after the bite, before the surgical revision, he felt "somewhat" self-conscious of the scar. His classmates and parents would stare at it, making him uncomfortable. Since the revision, Pulkrabek feels that when he meets strangers they focus on the scar, and that his parents do so as well. His father testified the scar bothers Pulkrabek and he often subconsciously puts his hand to his lip. His mother testified that he now smiles self-consciously.

The jury awarded Pulkrabek $1000 in damages for past embarrassment, emotional distress, pain and disfigurement. It awarded him no future damages.

Pulkrabek moved for additur or a new trial. The trial court denied the motion for new trial conditioned on Johnson's accepting additur of $4000 in past damages, which he did. The court explained its reasoning in a memorandum:

> Court agrees with counsel for the plaintiff that the jury verdict herein was conservative although the Court can understand the jury's reasoning that plaintiff had a good recovery and the remaining small scar on plaintiff's upper lip is not particularly disfiguring. One could speculate that had the plaintiff been a female, the jury perhaps would have been a bit more generous. The Court is in effect substituting its judgment for that of the jury by granting additur and given the lack of definitive guidelines to determine damages, admittedly the Court's values are the product of guesswork the same as the jury's.

Judgment for $5000 was entered for Pulkrabek. He appeals from the judgment and seeks a new trial on damages. Johnson noticed review, seeking reversal of the additur and reinstatement of the verdict.

## ISSUE

Did the trial court err in denying appellant's motion for a new trial conditioned on respondent's consenting to additur of $4000?

## ANALYSIS

Generally, a new trial on damages will be granted only where the verdict is so inadequate or excessive that it "could only have been rendered on account of passion or prejudice." *Flanagan v. Lindberg*, 404 N.W.2d 799, 800 (Minn.1987); Minn.R. Civ.P. 59.01(5). Pulkrabek argues he was entitled to a new trial based on this standard, and also because the verdict was "not justified by the evidence." Minn.R.Civ.P. 59.01(7); *see Lesewski v. Nielsen*, 254 Minn. 286, 289, 95 N.W.2d 13, 16 (1959) (stating new trial can be granted based on subdivision 7 as well as subdivision 5). He

implicitly contends the additur did not cure the award's alleged inadequacy.

Johnson contends that the verdict was adequate under rule 59.01, and so the trial court erred by granting conditional additur rather than denying the motion for new trial. Johnson would not be able to challenge the additur if Pulkrabek had not appealed. *See Jangula v. Klocek,* 284 Minn. 477, 488, 170 N.W.2d 587, 594 (1969) (plaintiff may notice review of remittitur despite his consent to it where defendant appeals from judgment).

A trial court has the broadest possible discretion to determine whether a new trial should be granted based on an inadequate award of damages. *Parr v. Cloutier,* 297 N.W.2d 138, 140 (Minn.1980). Its decision will not be reversed "absent a clear abuse of that discretion and the existence of the most unusual circumstances." *Id.* Similarly, whether to grant additur rests almost wholly within the trial court's discretion. *Krueger v. Knutson,* 261 Minn. 144, 154, 111 N.W.2d 526, 535 (1961).

Such discretion, however, has limits. The question of damages is essentially an issue of fact for the jury to decide. *State v. Frisby,* 260 Minn. 70, 74, 108 N.W.2d 769, 772 (1961) (affirming denial of new trial despite "conservative" verdict). The jury's decision is entitled to wide deference as long as it is within the range of reasonable awards. *See Buttz v. Bergeson,* 392 N.W.2d 917, 920 (Minn.Ct.App.1986); *Nelson v. Henning,* 354 N.W.2d 35, 42 (Minn. Ct.App.1984).

In *Sieren v. American Family Financial Services,* 356 N.W.2d 408 (Minn.Ct. App.1984), this court reversed a remittitur of punitive damages because the trial court's memorandum revealed its decision was based on an erroneous view of the law. We stated:

> Our supreme court has consistently indicated that trial courts "must take care to demonstrate that they have made some examination and explanation when the size of a jury verdict is challenged." * * * Only where that examination or explanation results in a clear abuse of

discretion may a reviewing court reverse a trial court's decision.

*Id.* at 412 (citations omitted).

▬▬ This standard requires reversal here. A trial court cannot grant additur unless grounds for a new trial on damages exist, since the court is, in effect, conditionally granting a new trial. Here, the trial court not only failed to find grounds for a new trial, but essentially found that such grounds do not exist. Its memorandum states:

> [T]he jury verdict * * * was conservative although the Court can understand the jury's reasoning that plaintiff had a good recovery and the remaining small scar on plaintiff's upper lip is not particularly disfiguring. * * * The court is in effect substituting its judgment for that of the jury.

This language shows that the trial court believed the verdict was not the product of passion or prejudice, but was apparently based on a reasonable, albeit conservative, evaluation of the evidence of Pulkrabek's injuries. A trial court cannot grant additur if it finds the jury's award to be reasonable. *Cf. Koenig v. Ludowese,* 308 Minn. 380, 383, 243 N.W.2d 29, 30 (1976) (under Minn.R.Civ.P. 59.01(7), trial court is not "free to set aside a jury verdict whenever it is displeased or dissatisfied").

Pulkrabek does not address the issue raised by the trial court's candid explanation of its decision. Instead, he cites cases where damages were held inadequate because they were less than proven special damages. *E.g., Pehrson v. Kistner,* 301 Minn. 299, 222 N.W.2d 334 (1974). This principle does not apply because Pulkrabek was not seeking special damages and offered no evidence of them.

Pulkrabek also claims the award is inadequate because Johnson's counsel in summation suggested an award of "a couple of thousand dollars." Johnson's counsel actually argued that "something in the neighborhood of a couple of thousand dollars * * * would be more than adequate." We could not affirm on this ground, even if it were accurate, in light of the trial court's memorandum decision.

## DECISION

The trial court erred by granting conditional additur rather than denying appellant's motion for a new trial. The court was, in its own words, merely "substituting its judgment for that of the jury" on an issue of fact, which it may not do. The judgment is reversed and remanded with instructions to enter judgment according to the jury's verdict.

Reversed and remanded.

RANDALL, J., dissents.

RANDALL, Judge, dissenting.

I respectfully disagree with the majority decision to reverse the trial court and reinstate the original damage award of $1000. To do so compounds the error of an inadequate verdict, which the trial court correctly attempted to rectify.

Appellant sustained a severe and permanent injury when bit in the lip by respondent's dog. The loss of tissue, approximately one inch wide and one inch long, caused a large enough hole to see through to appellant's gums. The injury required plastic surgery to repair the laceration, followed by reconstruction surgery, which left a conspicuous scar on appellant's left upper lip. Appellant suffered pain, swelling and discomfort during treatment and recovery. Although he no longer has recurrent pain, sensation in the lip area has been altered and the scar pigmentation differs from that of surrounding healthy tissue. Appellant's outer lip is irregular, and his smile has been affected by the scarring. The $1000 damage award was inadequate as a matter of law.

Respondent only cross appealed from the additur when appellant, not being content with the $4000 additur that the trial court granted, appealed the denial of his motion for a new trial. Except for having been given the benefit of a "free" appeal, respondent would have been satisfied to pay the $5000, still an overly conservative verdict considering the damages and the strict liability.

It is true that under Minn.R.Civ.P. 59.-01(7) a trial court is supposed to expressly state that a verdict "is not justified by the evidence, or is contrary to law," if that is the basis of its ruling. It is correct, as the majority points out, that the trial court did not use those exact words in its order and accompanying memorandum. However, in reviewing the motion for a new trial and the court order, I find that, despite the informal and colloquial memorandum, it is clear that on the overall record the trial court found the damage award inadequate as a matter of law. I concur with the trial court that it was. I disagree with the majority that the meaning of the court's memorandum was that the jury verdict was based on a reasonable evaluation of the injuries. The only fair inference that can be drawn is that the trial court found the verdict not justified by the evidence and determined that only an additur or a new trial would correct the inequity.

The majority acknowledges the discretion and deference granted trial courts when deciding motions for a new trial and issues of additur and remitter. It serves no useful purpose for this court to take a $5000 figure that the trial court found just met the minimum threshold of fairness, and reduce it to the original verdict of $1000.

I would affirm the trial court.